## WELLER v. WAGNER, Appellant.

### Division Two, March 23, 1904.

1. **EJECTMENT: Conflicting Evidence.** Where the evidence in ejectment is conflicting a motion for a new trial should not be sustained on the ground that there was not sufficient evidence to justify the verdict.

2. ————: **Admission of Evidence: Unauthorized Survey.** A party can not acquiesce in the testimony of a surveyor without objecting to it on the ground that the survey was made without authority of law, even though it would have been inadmissible on that ground if the objection had been timely made, and thereafter raise that objection on the motion for a new trial.

3. ————: ————: **Non-Prejudicial Error.** The court refused to permit appellant to prove by a neighborhood witness that he had never heard the line between plaintiff's and defendant's land disputed, or that any claim to the land on appellant's side of the fence was ever made by anybody except appellant. *Held,* that, under the circumstances of this case, in which there is evidence that neither party ever claimed beyond the true line, it is not conceded that this ruling was erroneous, but even if so, it was non-prejudicial.

4. ————: **Hostile Possession: Instruction.** A possession which in law is adverse is hostile; and hence, in the use of the word "hostile" an instruction which required defendant, where plaintiff had the legal title, to have had "uninterrupted, continuous, adverse and hostile possession" of the strip of land in suit for ten years or more, etc., did not add to or take from its legal meaning.

Appeal from Holt Circuit Court.—*Hon. Gallatin Craig,* Judge.

AFFIRMED.

*Thos. C. Dungan* and *H. S. Kelley* for appellant.

(1)    The court erred in overruling defendant's motion for a new trial. There was not sufficient evidence to justify a verdict. When the evidence of the plaintiff does not entitle him to a verdict, or when the evidence greatly preponderates against the verdict, a new trial will be ordered by this court. Schmidt v. Railroad, 149 Mo. 269, 152 Mo. 257; Powell v. Railroad, 76 Mo. 80; Lenox v. Railroad, 76 Mo. 86; Spohn v. Railroad, 87 Mo. 74; Avery v. Fitzgerald, 94 Mo. 207.    (2) This is a controversy over a division line between adjoining proprietors. The line has been twice surveyed by county surveyors. First by Davis in 1868, who established the line, and the then owners on either side built a division fence on that line, and the defendant claims that as the correct line, and has had possession of the strip in controversy for nearly thirty years. The second or last survey was made by Landon, in 1898, at the instance of the plaintiff, and changed the line, taking from defendant the strip of land in controversy and giving it to plaintiff. The corners were not lost, but the line run in 1868 was identified by the fence which was built on the line soon after it was run. This line the plaintiff had no right to change by a subsequent or the last survey. R. S. 1899, secs. 10209 and 10188; Knight v. Elliott, 57 Mo. 317. The last survey, by Landon, in 1898, should be rejected, in which case there is no evidence whatever to sustain plaintiff's action.    (3)    The court erred in refusing a new trial because the verdict was against the evidence and against the law and the evidence.    (a)    There was no express agreement that the fence should be considered as the true line, but the line was run and the corners were established by the surveyor in 1868, and the fence was built on the line soon afterward by agreement of the owners of the land, and it has always been regarded as on the line, and has been kept up and maintained and

repaired by them as a line fence.    This was equivalent
to an express agreement, although such agreement need
not be shown by direct evidence, but may be inferred
from the acts and conduct and long acquiescence of the
parties.    Jacob v. Mosley, 91 Mo. 457.    (b)    The de-
fendant was not required to rely upon an agreement.
He had the exclusive and uninterrupted adverse pos-
session of the strip of land up to the fence for more than
thirty years before this suit was brought under claim of
right and title, believing the fence was on the line.
This entitled him to a verdict.    The burden was on the
plaintiff to overcome this claim by showing by clear
and unequivocal evidence that it was conditioned upon
the subsequent ascertainment of the correct line at a
different place.    Brummell v. Harris, 148 Mo. 430;
Hedges v. Pollard, 149 Mo. 226; Cole v. Parker, 70 Mo.
379; Golterman v. Schiermann, 125 Mo. 290; s. c., 111
Mo. 419.    (c)    The evidence must show that defend-
ant's possession was conditional before the statute
of limitation commenced running in his favor, for
after ten years of such adverse occupancy had elapsed,
no verbal statement or qualification of his possession
would defeat his legal vested title derived by such ad-
verse holding.    Handlan v. McManus, 100 Mo. 125;
Cole v. Parker, 70 Mo. 379; Battner v. Baker, 108 Mo.
315; Golterman v. Schiermann, 111 Mo. 418.

C. A. Anthony, John Kennish and R. B. Bridge-
man for respondent.

(1)    The evidence was sufficient; the jury have
passed on the evidence; the Supreme Court will not
disturb their finding on this ground.    Bray v. Kremp,
113 Mo. 552; State v. Richardson, 117 Mo. 587; Blan-
ton v. Dold, 109 Mo. 65.    (2)    Landon was county sur-
veyor and acting in that capacity his acts are valid,
whether done at the instance of Weller or of Wagner,
or of both, and Landon was a competent witness as to

his survey. Even private surveyors may testify from surveys made by themselves, as to the true location of corners and section lines, even though not made by consent of the parties. Hopper v. Hickman, 145 Mo. 411; Johnson v. Boonville, 85 Mo. App. 203. (3) The testimony of defendant Wagner, if true, establishes two propositions: (a) that he believed the fence was on the true line and his intent to hold only to the true line; (b) that Wagner at all times, acting on the belief that the fence was on the true line, had no occasion to, and never did, enter into or make an agreement with Stults or any one else that the fence should be the boundary line; such an agreement is inconsistent with the facts as developed. This evidence is conclusive on Wagner that he never intended to claim as his own any land in the south half of the northeast quarter, but only to the true line between the north and south half of said northeast quarter. Wagner's possession was, therefore, not adverse to the true owner, and did not set the statute running. Pharis v. Jones, 122 Mo. 130; McWilliams v. Samuel, 123 Mo. 662; Schad v. Sharp, 95 Mo. 573; Krider v. Milner, 99 Mo. 189; Patton v. Smith, 71 S. W. 187; Shotwell v. Gordon, 121 Mo. 482; Brummell v. Harris, 148 Mo. 442. Wagner's whole course is consistent with one theory only—that he intended to hold to the true line only. Patton v. Smith, supra; McCabe v. Bruere, 153 Mo. 5. (4) Appellant takes special pains to attack plaintiff's instruction because the word "hostile" is used. The essence of adverse possession is a holding contrary to and not in harmony with another. Meier v. Meier, 105 Mo. 432; Knowlton v. Smith, 36 Mo. 514; Crawford v. Arnes, 103 Mo. 95. All the evidence in this case shows that Wagner never intended to claim any land in the south half of the northeast quarter, that the holding was by mistake or permissive. Patton v. Smith, 71 S. W. 187; Houx v. Patteen, 63 Mo. 84; McCabe v. Bruere, 153 Mo. 6; Comstock v. Eastwood, 108 Mo. 47.

BURGESS, J.—This is an action of ejectment to recover possession of a narrow strip of land six inches wide at one end and twenty feet wide at the other end, and one hundred and sixty rods long.

The case was tried by the court and jury, the trial resulting in a verdict and judgment for plaintiff for the possession of the land.

Defendant appeals and assigns error. The facts are about as follows:

Plaintiff Weller and defendant Wagner are adjoining landowners. Weller owns the south half and Wagner the north half of the northeast quarter of section 4, township 62, range 37, in Holt county, Missouri. Wagner also owns the land adjoining Weller on the east, so that the boundary line between their lands extends a quarter of a mile east and west on Weller's east line and a half mile east and west on Weller's north line. The line in controversy in this suit is that running east and west. In the year 1898, the county surveyor, Landon, made a survey, and established the entire boundary line between these landowners, not only on the north of Weller's land, but also on the east. This survey, Weller testified, was made pursuant to an agreement of long standing between him and Wagner for the purpose of ascertaining the true boundary line between them in order that good and permanent fences might be built thereon. Wagner furnished a hand to assist in said survey. On Weller's east, the line so established by Landon was in on Weller's enclosure, five or six rods west of the old boundary line fence; and a new fence was thereupon built on such line, as located by Landon, Weller building one half and Wagner the other. The corner established by Landon on the north corner of the north and south line, and on the east corner of the east and west line, was about six inches on Wagner's enclosure north of the east and west boundary line fence then

standing. The west corner of the east and west lines as established by Landon was about twenty feet on Wagner and north of the said east and west boundary fence. Wagner refused to recognize that part of Landon's survey locating this east and west boundary line, and it is for the strip of land lying between this line of the Landon survey and the east and west boundary fence, that this suit in ejectment was brought to recover.

The answer is a general denial and a plea of title by the statute of limitations.

Wagner bought the west forty along the line in controversy, in 1866, and built the fence on said forty in 1868. He bought the east forty about 1874, and fenced it a year or two after. Weller owned the south half of the north half of section four, being four forties in a line extending across the entire section. Of the east eighty, along the line in dispute, Weller bought the west forty from Swope in 1888, and the east forty from Stultz in 1896. The fence forming the east and west boundary line between Weller and Wagner, stood in the same place when Weller purchased the land as at the commencement of this suit.

Defendant's evidence tended to prove that this boundary fence had never been changed since it was first built. He testified that at one time he set the fence back on his land one foot and there was evidence tending to prove that for some years preceding, and up to the year 1880, a public road ran east and west on the north side of said boundary fence. Wagner in his testimony says: there might have been a road there, but that "I forgot about setting the fence over there. I rather think it was done." He also stated in his testimony, as did several other witnesses, that the surface of the ground indicated that there had been a fence about twelve feet north of where the present fence stands. Weller testified, and was corroborated in his testimony, that in 1888, shortly after he purchased the Swope

forty, he had a conversation with Wagner, in which
Wagner said he did not know whether this fence was on
the line or not, and that it was agreed and understood
between them at that time, that as soon as they could
get the line surveyed they would put in a good fence,
and that they had had several conversations to that effect
thereafter.    There had been at different times four
surveys by county surveyors, each of which had some
bearing upon the line in dispute.    In 1868, Davis,
county surveyor, attempted to locate this line for
Wagner.    His report shows that he commenced at the
quarter section corner on the north of section four, and
running south placed a stone at the southwest corner
and another at the southeast corner of Wagner's
west forty.    Wagner testified that he built his fence
according to this line.    Weller testified that he saw
the Davis corner stone at Wagner's southeast corner
at one time, and that it stood at least five feet north
of the fence.    At the time of the Landon survey in 1898,
none of the Davis corners could be found, not even the
government quarter section corner on the north.    In
1877, McCoy, then county surveyor, made a survey and
located the center corner of the section.    According to
the McCoy survey, the corner at the west end of the
line in controversy would be about fifteen feet farther
north than as located by Landon.    Sometime before the
Landon survey, the evidence does not show the time,
Morris made a partial survey of this line, beginning at
the east end and running west about half way.    The
stakes set by Morris were still there when Landon made
his survey.  This survey was not completed, but as far
as he did survey he set stakes at distances north of the
fence, corresponding closely with the line subse-
quently located by Landon.    When Landon made his
survey in 1898, but three established corners were
found on the section, viz., the northwest section corner,
the quarter section corner on the south, and a corner a

quarter of a mile west of said quarter section corner established by county surveyor Collins in 1852.

Landon's survey fixed the three missing section corners by extending the lines from government corners found outside of section four, except the south line which was extended from two corners already there. He then surveyed through the center of the section north and south and east and west, and by careful measurements therefrom located the line in dispute. So far as this survey resulted in cutting off a strip of land five or six rods wide from Weller's enclosure and adding it to Wagner's, the defendant himself accepted its correctness without question, and showed his acquiescence by setting his fence accordingly. It was only where it began by cutting off six inches from his enclosure, that he showed his disapproval.

Landon testified that the surface of the ground indicated that on the west end of the line, according to his survey, there had formerly been a fence row or back furrow running east about on the line established by him as the true boundary line. The old boundary fence is not straight. One witness stated that there is a bend in it of four or five rods at one point.

Wagner testified that he did not intend to claim any land beyond the true line according to the government survey; that he did not aim to take in any land that did not belong to the north half of the northeast quarter, and does not claim that yet.

Four instructions were given at the request of the plaintiff, and six at the request of the defendant. One instruction only, No. 7, asked by the defendant, was refused by the court. Instruction No. 6, asked by the defendant, was given by the court and no instruction was given by the court of its own motion.

The first assignment is with respect to the action of the court in overruling defendant's motion for a new trial, which defendant insists should have been sustained upon the ground that there was not sufficient evidence

to justify the verdict.   We are unable to agree to this assertion, as it clearly appears from the record that the evidence was conflicting upon the issues submitted to the jury, whose province it was to pass upon its weight, and, under such circumstances, it is well settled that this court will not interfere. · [Bray v. Kremp, 113 Mo. 552; State v. Richardson, 117 Mo. 586; Blanton v. Dold, 109 Mo. 64.]

Defendant, however, argues that without the evidence of Landon, the county surveyor, there was no evidence to sustain plaintiff's theory of the case, and that his survey, and the lines and corners made by him, were unauthorized, and that the right and title to the strip of land in controversy should be determined by the evidence and facts, regardless of his survey, which was without authority of law.   But defendant is in no position to avail himself of these facts, even if true, for the reason that the testimony was admitted without objection, and it is well settled that a party can not sit quietly by and not object to evidence which is inadmissible and thereafter for the first time raise the objection on motion for a new trial.

On the cross-examination of defendant, who testified as a witness in his own behalf, he stated that Jacob Stultz, who conveyed the southeast quarter of the northeast quarter of section four, township sixty-two of range thirty-seven, to Ernest F. Weller, plaintiff, on the 9th day of December, 1896, had the land surveyed. "He established the line between us, and he was satisfied with the line, and I was, and I put all the fence up and he paid me for it.   That was after Stultz bought the land that Weller now has.   Mr. Stultz is now dead." Plaintiff then asked that these statements of the witness be stricken from the record, on the ground that he says that he and Stultz agreed on that as the line, and Stultz being dead his statements would not be admissible. The court, over the objection of defendant, ordered it stricken out, upon the grounds that the answer was not

responsive to the question, was a voluntary statement, and because Stultz, with whom the conversation was had, had since died. The record does not disclose what the question was, in the absence of which it is impossible for us to determine whether the answer was responsive to it or not—and we must therefore presume that the ruling of the court was correct.

The point is made upon the ruling of the court in refusing to permit defendant to, prove by witness McDonald, who lived in the neighborhood, that he had never heard the fact that the fence was on the line disputed or called in question or any claim made to the land on defendant's side of the fence by anybody but defendant. This evidence was excluded, and we think correctly so, upon the ground that it was an attempt by defendant to prove negatively the fact that no objection was made. In any event the judgment should not be reversed upon that ground—even if the ruling of the court was erroneous, which we do not concede—because the error, if one, was non-prejudicial.

Plaintiff's instruction numbered one is criticised upon the ground that it was not justified by the evidence, and was calculated to mislead the jury. It told the jury that the deeds read in evidence conveyed to the plaintiff the legal title to the south half of the northeast quarter of section four, and if the strip of land, or any part of it described in plaintiff's petition, is a part of said south half of the northeast quarter, then the plaintiff was entitled to the possession of said strip, and unless they believe from the evidence that the defendant has been in uninterrupted, continuous, adverse, and *hostile* possession of said strip for ten years or more, with the continued intent to claim the land between the true lines according to government survey and the fence, the finding must be for plaintiff. The contention is that the words ''adverse and hostile'' as used in the instruction are misleading, and that the word ''hostile'' as used required a different possession than that which

the law requires. "Adverse" and "hostile" mean practically the same thing. That which is adverse in law is hostile, and that which is hostile is adverse. Therefore, while the instruction was well enough without the word "hostile," the use of it did not render it subject to the objection urged against it.

Sparrow v. Hovey, 44 Mich. 63, was an ejectment for a tract of land, and the defense relied upon the statute of limitations. The plaintiff asked the court to instruct the jury that defendant to complete his defense must show that his possession for the requisite time was actual, continued, visible, notorious, distinct and *hostile*. The judge gave the instruction with the omission of the last three qualities, and refused to give it otherwise; Judge Cooley, in speaking for the court, said:

"Why he thus limited it does not appear and we can not surmise. The request was entirely proper, and should have been given. [Yelverton v. Steele, 40 Mich. 538.] It can not be said that the instruction given covered the case, for a possession may be actual, continued and visible, without being either notorious or hostile, and no possession can be adverse within the intent of the Statute of Limitations that lacks either of these qualities." [See, also, Miller v. Platt, 5 Duer 272.] The instruction was, we think, unobjectionable.

Defendant claims that the court erred in refusing instruction numbered six asked by him. But the same matter embraced by this instruction was covered by instructions numbered four and five given for defendant, hence there was no error in refusing it.

The instructions that were given covered every feature of the case, which seems to have been well tried, and finding no reversible error in the record the judgment will be affirmed.

It is so ordered. All concur.