DOWLING, Respondent, v. WHEELER, Appellant.

St. Louis Court of Appeals, March 13, 1906.

1. **JOINT AND SEVERAL CONTRACTS: Sales.** Where all the stockholders in a corporation placed their certificates of stock in the hands of a trustee with power to sell the same and all the assets of the corporation, with no agreement that the proceeds of the sale should become a joint fund, and a purchaser bought all the stock at so much per share, the sale was a several contract on the part of each stockholder and each stockholder was entitled to sue the purchaser in his own name, for his share of the proceeds.

2. **PRACTICE: Same Cause Pending: Splitting Causes: Stipulation.** Where a plaintiff sued while another suit was pending between the same parties on the same cause of action and it was stipulated that the former suit should abide the result of the one on trial, the defendant by the stipulation waived his right to claim that the action on trial was improperly brought because the former suit was pending, or that the plaintiff was splitting his causes of action.

3. **APPELLATE PRACTICE: Weight of Evidence.** Where there was substantial evidence to support the verdict of a jury, the appellate court will accept the verdict as conclusive.

Appeal from St. Louis City Circuit Court.—*Hon. O'Neill Ryan*, Judge.

AFFIRMED.

*Judson & Green* for appellant.

(1) The case made by respondent is fatally defective. It appears from the undisputed evidence that all the interested persons have not been made parties to this action, and appellant's instruction in the nature of a demurrer to the evidence, as also his motion in arrest of

judgment, should have been sustained: (a) Because the evidence discloses that the contract with Brown, trustee, sued upon, if it be held to be a contract between appellant and the other shareholders, in the Standard Tile Company, is certainly a joint contract, and therefore all said shareholders must be united as parties plaintiff. Lucas v. Beale, 10 C. B. 739; Clarke v. Cable, 21 Mo. 223; Davis v. Wannamaker, 2 Colo. 637; Dillon's Adm. v. Bates, 39 Mo. 292; Little v. Harrington, 71 Mo. 390; Thieman v. Goodnight, 17 Mo. App. 429; McLaren v. Wilhelm, 50 Mo. App. 658; Carr v. Muldrow, 44 Mo. 393; Donahue v. Bragg, 49 Mo. App. 275. (b) Because even if the contract sued upon is held not to be a joint contract between appellant and all other · shareholders, yet the suit should have been brought either by said Brown, as trustee, or else said Brown and all of the remaining *cestuis que trustent* should have been joined as plaintiffs; and if said trustee or any of said shareholders refused to join as plaintiffs, then the suit should have been filed as a bill in equity and all who refused to join as plaintiffs should have been made parties defendant, with proper allegations in the petition for so joining them. (2) This to avoid a multiplicity of suits and to enable the court to do full and adequate justice between all the parties in any judgment or decree it might render. Dillon's Adm. v. Bates, 39 Mo. 292; State to use v. Thornton, 56 Mo. 327; Lindheim v. Railway, 68 Hun (N. Y.) 122; Goodwin v. Goodwin. 69 Mo. 621-622. (3) The court erred in excluding the pleadings in the interpleader suit of Willi Brown, trustee, against respondent, the two Sauers and appellant, offered in evidence by appellant in support of the defense of "another action pending," expressly pleaded by him in his answer herein. Pickett v. McCord, 62 Mo. App. 467; Robbins v. Conley, 47 Mo. App. 502; Koenig v. Morrison, 44 Mo. App. 411; Bendernagle v. Cocks, 32 Am. Dec. 448; Dundee v. Ins. Co., 26 Fed. Rep. 831; Morgan v. Squeir, 8 Ind. 511.

*Carter, Collins & Jones* for respondent.

(1)   It is true that parties united in interest must be joined as plaintiffs or defendants.  R. S. 1899, sec. 544.  But it is also true that every action is to be prosecuted in the name of the real party in interest.  R. S. 1899, sec. 540.   And while an exception to this rule is found in the following section of the statute, which provides that an executor or administrator, a trustee of an express trust or a person expressly authorized by statute, may sue in his own name without joining with him the person for whose benefit the suit is prosecuted, and while the trustee of an express trust is construed to include a person with whom and in whose name, a contract is made for the benefit of another (R. S. 1899, sec. 541), still this does not prevent the beneficiary from bringing a suit; on the contrary, either the trustee or or the beneficiary or both may sue.   Ellis v. Harrison, 104 Mo. 270, 16 S. W. 198; Chouteau v. Boughton, 100 Mo. 406, 13 S. W. 877; McComas v. Ins. Co., 56 Mo. 573; Rogers v. Gosnell, 51 Mo. 466; Nicolay v. Fritschle, 40 Mo. 67; Beck v. Haas, 111 Mo. 264, 20 S. W. 19; Wright v. Tinsley, 30 Mo. 389; Hitch v. Stonebraker, 125 Mo. 128, 28 S. W. 443.   (2)   Where the interest in the subject-matter secured by a covenant is several, although the terms might naturally bear a joint interpretation, yet if they do not exclude the inference of being intended to be several, they must have a several construction put upon them.   Cross v. Williams, 72 Mo. 577; Bliss on Code Pleadings, sec. 63; Parsons on Contracts, page 18; Sharp v. Conkling, 36 Vt. 355; Davis & Rankin v. Hendrix, 59 Mo. App. 444; Bowman v. Branson, 111 Mo. 343, 19 S. W. 634; Smith v. White, 48 Mo. App. 404; Bush v. Haeussler, 26 Mo. App. 265; Bliss on Code Pleadings, sec. 92.   (3)   When parties engage for the performance of distinct and several duties, mere words of plurality, or the contract being in form a joint one, will not make

the contract joint. 1 Addison on Contracts (Morgan's Ed.), p. 86; Fell v. Goslin, 7 Exch. 185; Enys v. Donnithorn, 2 Bur. 1190.

STATEMENT.—The Standard Tile Company is a Missouri corporation and did business in this State. From its organization until the year 1901, defendant was its business manager and was a director of the company during the year 1901. As manager, he was succeeded by W. C. Hutchinson. The business of the company proved unprofitable and at a meeting of the stockholders held on December 28, 1901, the following agreement to dispose of all the assets of the company was signed by all of the stockholders:

"St. Louis, Mo., December 28, 1901.

"By this agreement, we, the undersigned, hereby deposit our certificates for shares of stock in the Standard Tile Company set opposite our respective names, with Willi Brown, trustee. with authority in said trustee to sell the entire assets of said company, consisting of stock on hand, furniture, book accounts, good will and personal property of every nature, kind and description, to the highest bidder at the office of said company, No. 1416 Chemical Building, 721 Olive street, St. Louis, Missouri, on the 20th day of January, 1902, at noon, without further notice or advertisement, and said trustee is hereby authorized to execute to said highest bidder a quitclaim deed from said company for the real estate and plant situated in St. Louis county, Missouri, and to turn over to the highest bidder all the shares of stock in said company, mentioned below, for which purpose we have deposited with said trustee our said certificates of stock, properly indorsed in blank. .

| Name | No. of Shares |
|---|---|
| P. J. Dowling .... .... ............ | 64 1-2 |
| F. G. Eaton (provided all stockholders sign this or similar agreement and deposit all stock for such purposes) | 87 · |

Louis Chauvenet (under the same con-
   ditions above stated by Mr. Eaton)    80
H. A. Wheeler (provided it is unani-
   mous) ... ... ... ... ... ... ... ...   138
Nicholas Sauer ...... ...... ...... ...    40
F. E. Bush ............ ........ .....    25
A. V. Bohm ...................... ...    30
C. A. Bohm ........ ........ ...... ...    50
Arthur Thacher .... ... .......... ...     2
John D. Davis .... ... ........ ......    10
Willi Brown .... ........ ... ........    90
W. Christy Hutchinson ...... ......    50"

In pursuance of this agreement, on January 20,
1902, Brown as trustee, offered all of the stock for sale
at auction, bids to be so much per share of stock. At the
sale, defendant was the successful bidder for all the
stock at $10 per share and deposited with Brown $500
as earnest money on his purchase. On January 24, 1902,
defendant repudiated his purchase and demanded a re-
turn of the $500 deposited, by the following letter de-
livered to Brown:

"St. Louis, Mo., January 24, 1902.

"Willi Brown, Esq., trustee for Standard Tile Co.
stockholders, City.

"Dear Sir: When the capital stock of the Stand-
ard Tile Company was offered for sale by you as trustee,
Mr. W. C. Hutchinson, your manager, stated and repre-
sented that the company owned outstanding accounts re-
ceivable on Jan. 1, 1902, amounting to $5,621.50, all of
which were stated to be good.

"He also stated and represented that the stock on
hand Jan. 1, 1902, exceeded that on hand Jan. 1, 1901,
by 136 squares of first and second class tile.

"I find on investigation that these statements and
representations were not correct, that in fact the amount
of good accounts and tile on hand were both grossly ex-
aggerated. When I bid ten dollars per share for the
stock I relied upon the correctness of Mr. Hutchinson's

statements, and would not have bid ten dollars per share but for those statements which I believed to be correct. Therefore, on account of these material misrepresentations, I now rescind the said sale and demand from you the return of the five hundred dollars earnest money paid to you before said sale.

"Yours truly,<br>
"H. A. WHEELER."

Brown declined to return the tender and on January 31, 1902, by consent of all the stockholders, he again offered the property for sale at auction. At this sale W. C. Hutchinson became the purchaser at 5 per share for the capital stock, conceded by both parties to be the full value of the assets of the company including its franchise. Plaintiff was the owner of sixty-four and one-half shares of stock. The suit is for a breach of defendant's contract to complete payment for the stock at $10 per share. The damages are laid at $322.50, the difference between what defendant bid for plaintiff's stock and what plaintiff was compelled to accept for it on the second sale.

The answer states in substance that at the stockholders' meeting, December 28, 1901, when defendant and all the stockholders were present, W. C. Hutchinson, the manager of the corporation, submitted to the stockholders a statement in writing of the financial condition of the company for the express purpose of enabling the stockholders to intelligently determine what disposition should be made of the assets of the company; that said report was false and materially overstated the amount of bills receivable and bills payable and of the quantity of tile on hand; alleges that defendant read the report, believed it to be true, relied upon it as true and correct when he made his bid of $10 per share and would not have made the bid but for the report and his reliance thereon and that as soon as he discovered the report to be untrue, he repudiated his purchase and demanded his deposit of $500.

"Defendant further says that the said stockholders' agreement of December 28, 1901, which is attached to plaintiff's petition as exhibit 'A,' provides for the sale of all the assets, of the Standard Tile Company, including its franchise, as assets, and does not provide for the separate sale of each stockholder's stock, as stock, as alleged in plaintiff's petition, and therefore this plaintiff and the other stockholders in said company have a common interest in the funds realized at said sale, if the same was a valid one, and a common or united interest in any claim for damages arising therefrom; and in any event plaintiff cannot have or maintain this suit without joining the other stockholders of said Standard Tile Company herein.

"Further answering defendant says that there is another action now pending in this court instituted prior to this one between plaintiff and this defendant involving the same subject-matter, being the case of Brown against this defendant and this plaintiff as interpleaders and being case No. 24280, Room No. 10 of the St. Louis Circuit Court.

"Wherefore, having fully answered, defendant asks to be discharged with his costs."

The evidence is that by a request made on Hutchinson prior to the meeting of December 28th, by one or more of the stockholders, he prepared a written memorandum of the condition of the company and submitted it to the stockholders at that meeting. This report showed $5,621.50 of bills receivable, all of which Hutchinson stated at the meeting he believed to be good and collectible; that in fact only about $3,000 of these bills had been collected. The evidence also shows that the amount of tiling on hand was largely overstated in Hutchinson's memorandum.

On the part of plaintiff, the evidence tends to show that Hutchinson exhibited the memorandum but stated it was not complete; that the final balance sheet for the year 1901 would show a change and that the error in re-

spect to the amount of stock on hand as shown by the
report was caused by inaccuracies in the former annual
statement made to the stockholders by the defendant, the
then manager of the company; that defendant had fre-
quently examined the books of the company during the
year 1901 and as late as December of that year and had
frequently discussed with Hutchinson the business of the
company in detail and knew all about the accounts and
business of the company on January 20, 1902.

Over the objection of defendant, plaintiff offered in
evidence a stipulation providing that certain other suits
against defendant, by other parties, now pending in the
circuit court of the city of St. Louis, should abide the
decision in this case, said stipulation being in words
and figures as follows:

"In the circuit court of the city of St. Louis, Octo-
ber term, 1903.

"Sauer v. H. A. Wheeler. No. 26197, Room No. 10.

"Sauer v. Wheeler, No. 26196, Room No. 4.

"Willi Brown v. Patrick Dowling, H. A. Wheeler
et al., Interpleaders, No. 24280, Room No. 5.

"It is hereby stipulated by and between the parties
to the above entitled causes that they and each of them
shall await and abide by the final determination of the
case of Patrick J. Dowling v. H. A. Wheeler, No. 25,203,
Room 2, and that the same judgment shall be entered in
each of these cases as is finally rendered in said cause
and neither party shall appeal therefrom.

"JUDSON & GREEN,

"Attorneys for Defendant.

"C. C. COLLINS,

"Attorney for Plaintiffs."

Defendant testified that he had, during the year
1901, looked at some of the books of the company, but
that they were in such an incomplete condition that he
could learn nothing definite from them and that he knew
nothing about the financial condition of the company.
He procured and read in evidence a copy of the state-

ment made by Hutchison for the benefit of the stockholders at their meeting on December 28, 1901. The statement shows a total of accounts due the company January 1, 1902, $5,621.50 and a total of amounts payable on the same date of $436. Defendant also testified that he asked Hutchinson if the statement was complete and that his answer was that it was substantially the same as the balance sheet for the same year and that he considered all of the accounts reasonably good. Defendant stated that he relied upon this statement, believed it to be accurate, and made his bid of $10 per share on the faith of the statement and that he had no independent knowledge of the financial condition of the company, that a few days after making the bid he investigated and found the statement of the accounts receivable and of the bills payable both incorrect, in that there were freight charges to be deducted from the amount of said accounts receivable to the amount of about $1,100, and that the amount of the freight charges, although known by Mr. Hutchison to be due and owing, had not been included by him in his account of bills payable in said statement. That he also found that of said accounts receivable so shown in said statement there were about $1,000 then in the hands of collection agencies for collection, as bad or doubtful accounts. That upon discovering these facts he wrote and had delivered to Willi Brown, trustee, the letter of January 24th herein set out, rescinding said contract of sale and declining to take said stock and demanding the return of his said earnest money. Arthur Thacher, a witness called by defendant, testified that he was one of the directors and stockholders of the Standard Tile Company and was present on the 20th day of January, 1902, at the first sale to Mr. Wheeler and that at said meeting Mr. W. Christy Hutchinson had the written statement of the assets and liabilities of the Standard Tile Company hereinbefore set out. That at said meeting and in the presence of Mr.

117 App.—12

Wheeler and the other stockholders present, he asked Mr. Hutchinson whether the accounts receivable shown on the said statement were all good, and that Mr. Hutchinson said that he considered them good. Defendant's evidence further shows that Brown filed an interpleader petition in the St. Louis Circuit Court, returnable to the April term, 1902 (the same term to which the case in hand was returnable), against Dowling, Wheeler, Nicholas and John Sauer, in which he set forth the facts of the two sales, the payment of the $500 by Wheeler at the first sale as earnest money, and that defendant, Wheeler, was claiming the whole of the deposit and the other defendants certain proportions of the same, and asked that they be required to interplead. An order on the defendants to interplead was made in accordance with the prayer of the petition. Dowling and the two Sauers filed a joint answer, in which they alleged substantially that Wheeler repudiated his contract of purchase without sufficient cause and that each of them was entitled to a certain proportion of the $500. Wheeler, in his separate answer, alleged fraud and deceit in the sale, and asked that the $500 deposited by him as earnest money be returned.

Instructions for a compulsory nonsuit at the close of plaintiff's evidence and again at the close of all the evidence were asked by defendant but refused. The court substantially instructed the jury that if they found the facts as plaintiff's evidence tended to show them to be, plaintiff was entitled to recover the sum sued for.

For the defendant, the court instructed that if they found Hutchinson's statement of the condition of the company did not in fact correctly state the amount of said accounts due the company, or the amount of its liabilities or the amount of tile and other assets then owned by the company, and that the amount of said accounts due the company, or the amount of tile or other assests then on hand was materially less than represented in said statement, or the amount of its liabilities was

materially greater than represented therein, and if they further found that the defendant, at the time he made the bid in question, believed said report to be correct and relied upon it in making said bid, and that defendant would not have made said bid except for said written report, then the defendant had a right to rescind the said sale, and the verdict should be for defendant, even though they believe from the evidence that said W. C. Hutchinson at the time believed said statement to be true and that he did not intentionally try to deceive defendant as to the matters therein stated. The court also gave the following instruction for defendant:

"The court instructs the jury that although the defendant was a stockholder and director in the Standard Tile Company and as such, had a legal right to examine its books and to ascertain and determine for himself the amount of tile and other assets then owned by the company, yet he was not bound to do this and he had a right to rely upon said written statement if you believe and find from the evidence that such a statement was prepared by the managing officers of said company and was shown to this defendant and other stockholders at a meeting of stockholders held on December 27, 1901, for the purpose of informing them as to the assets of the company and of enabling them to determine what disposition should be made of the assets of the said company, and what price they should bid therefor at the sale held on January 20, 1902, provided you further find from the evidence that defendant had no knowledge of the financial condition and assets of the Standard Tile Company except what he obtained from said statement."

Verdict and judgment were for the plaintiff, from which defendant appealed, having first taken proper steps to preserve his exceptions.

BLAND, P. J. (after stating the facts).—1. The answer of defendant alleges, in substance, that the agreement of the stockholders, dated December 28, 1901, set

out in the petition, provides for the sale of all the assets and shares of stock of the Standard Tile Company and not for the separate sale of each stockholder's shares; that all the stockholders of the company have a common interest in the fund realized at the sale, that their interest is a united one and that plaintiff, as an individual stockholder, has no separate interest therein and cannot maintain this suit. The parties to the agreement placed their several certificates of stock in the hands of Brown, as trustee, with power to sell said stock and all the assets of the corporation, including all real and personal property and choses in action at public auction, on the day named in the agreement, to the highest bidder, conferring upon Brown, as such trustee, power to execute a quitclaim deed to the real estate and to turn over the personal property and shares of stock to the purchaser. There was no separate offer or bid made for the plaintiff's individual stock, but the bid was for all the shares of stock owned by the plaintiff and all other stockholders of the corporation at ten dollars per share for each and all shares of stock. The purchase was of all the stock of the corporation, including that of plaintiff, at one time and by one bid, but on the basis of ten dollars per share for each share of stock that had been issued by the corporation. In its legal aspect, the transaction was not different from what it would have been had the defendant, on the day he made his bid, in the presence of all the stockholders said to them, "I will give you ten dollars per share for your stock, if each one of you will transfer to me all of your certificates of stock and turn over to me the entire assets of the corporation," and his offer had been accepted by all the stockholders. The agreement of December twenty-eighth is a joint one only in so far as it bound each stockholder to place his certificate of stock in the hands of Brown, as trustee, to be sold at auction and to abide by the sale after it was made. There was no agreement that the proceeds of the sale should become a joint or common fund, belonging to

all the stockholders; on the contrary, the agreement imports that after the sale each stockholder should receive the price per share bid on the whole number of shares turned over by him to Brown, as trustee. In legal contemplation, therefore, the sale was of the shares of stock held by the individual members of the corporation and not a joint sale of all their stock on joint account, and we think the plaintiff can maintain this action.

2. Defendant offered in evidence the pleadings in an interpleader's suit, brought by Brown against Wheeler et al., in respect to the five hundred dollars earnest money, placed in the hands of Brown by Wheeler under the terms of the auction sale. These pleadings were excluded by the court. In the interpleader's suit, it appears that plaintiff claimed his proportion of the five hundred dollars. By his interplea, plaintiff sought to hold the defendant to his bargain and to force him to accept and pay for the stock on the basis of his bid at the auction sale. By the present suit he is seeking the same relief on the same state of facts. The only difference between the two suits is that in the interpleader's suit the plaintiff seeks to recover a part of the purchase price of his stock, whereas in this one he asks for the recovery of the entire purchase price. Of course, he cannot recover in both suits. Defendant, however, insists that plaintiff has split one entire cause of action and made them the subject of two separate suits. This fact was called to the attention of the court by the defendant's answer, and we would hold that plaintiff cannot prosecute both actions were it not for the stipulation read in evidence, which is to the effect that defendant agreed that the interpleader's suit should abide the result of the present one. We think this stipulation is a distinct waiver of the objection that the plaintiff had split his demand and is improperly prosecuting this action.

3. No point is made on the instruction of the court to the jury, but defendant earnestly insists that in the

light of the evidence, that defendant's bid for the stock was double its actual value at the time, it is apparent he bid under a misapprehension in respect to the value of the assets of the corporation and that he was led into this error by the erroneous and misleading report of the financial condition of the corporation, made by Hutchinson to the stockholders. If this was a suit in equity, the appeal to us would not be in vain; but the action is at law and no doubt the same appeal was made to the jury on the trial. The jury, it seems, was unmoved by the appeal. We are without authority to review the evidence or to correct or set aside the verdict, even though we may believe it is against the weight of the evidence and is for the wrong party; for where there is any substantial evidence to support a verdict, that verdict is invulnerable to attack on appeal, and this court is compelled by the rules of appellate procedure to accept the verdict as conclusive on all issues of fact raised by the pleadings.

Discovering no reversible error in the record, the judgment is affirmed. All concur.