MILEM, Respondent, v. FREEMAN, Appellant.

St. Louis Court of Appeals, Submitted January 26, 1909, Opinion
Filed March 9, 1909.

1. UNLAWFUL DETAINER: Possession: Survey. The mere fact
of a survey of a tract of land unaccompanied by any acts in-
dicating that it has been made, or other acts of ownership,
is not an act of possession by the party making such survey
such as to authorize an action of unlawful detainer against
a party afterwards in possession.

2. ————: ————: Reputation. A mere claim of ownership
of a tract of land and a reputation for being in possession are
not facts having probative force to show possession which
would authorize an action of unlawful detainer against a party
afterwards in possession.

3. ————: ————: Prima-Facie Case. In an action of unlawful
detainer where plaintiff's claim is based on previous possession
extending over a period of more than three years, the evidence
is examined and held insufficient to make out a prima-facie
case for plaintiff, so that the verdict of the jury in favor of
the plaintiff is ordered set aside.

Appeal from Scott Circuit Court.—*Hon. Henry C.
Riley,* Judge.

REVERSED.

*Joe W. Moore* and *Geo. B. Parsons* for appellant.

(1)   Before plaintiff is entitled to recover in this
case he must show that either he or his grantors had
been in actual possession of the entire premises sued for
at some time within three years before the suit was
brought.   Miller v. Tillman, 61 Mo. 317.   And by the
evidence of plaintiff's own witnesses, Norrid and Pate,
plaintiff nor his predecessors had been in possession,
and on this material point there is no conflict in the
evidence. In fact, plaintiff himself admits that a part of
the poultry house, before it was turned around, was on
this land. (2)   The only real question involved in this

case is whether plaintiff was in actual possession of all the strip of land sued for at the time he claims defendant usurped possession in December, 1906. Buck v. Endicott, 103 Mo. App. 248.

*M. G. Gresham* for respondent.

The courts have held in a long line of decisions, that in order to constitute such a possession as will sustain an action in unlawful or forcible entry and detainer, it is not necessary that the party should stand on the land, or keep a servant or agent there; but any act done by himself on the premises, indicating an intention to hold the possession thereof to himself, will be sufficient to give him the actual possession. Bartlett v. Draper, 23 Mo. 407; School District v. Holmes, 53 Mo. App. 490; Miller v. Northrop, 49 Mo. 397; Bradley v. West, 60 Mo. 59.

REYNOLDS, P. J.—Action under section 3321, Revised Statutes 1899, for unlawful detainer of a strip of ground within the limits of the city of Sikeston, in Scott county. As described in the petition filed with the justice and on which the case was tried in the circuit court, the parcel is 12.75 feet along the south line of Front street, then 120.67 feet along the west line of King street to the intersection of the west line of King street with the north line of the right of way of the Iron Mountain Railway, then along the right of way seven-hundredths of a foot to the southeast corner of block 7, in Sikeston, and thence along the east line of block 7, one hundred and twenty feet to the place of beginning. This description shows practically a triangular piece, the base being 12.75 feet, one side 120.67, the other 120 feet, and the lower end, seven-hundredths of a foot, being practically a point about seven-eights of an inch. The location will be better understood by reference to part of the plat of Sikeston which is reproduced in the

brief of counsel for respondent, which we have changed only by adding in the name "Front street," where we understood it to be, and have marked the piece in dispute in black. That plat, as far as necessary to explain the situation is as follows:

Point of Beginning
BLACK TRIANGLE SHOWS PROPERTY IN DISPUTE

It is described in the petition as being a part of United States survey No. 625, and it might be inferred from the description in the petition that it is not within the limits of the city of Sikeston, which gives rise to some question as to whether it is within the jurisdiction of the justice of the peace, but as no suggestion of that

kind is made we pass that by. The description, however, placing the tract in survey No. 625 and not within the limits of Sikeston, was not an accident, but was of purpose, as we will hereafter note. The petition charges that on or about October 6, 1906, the plaintiff, respondent here, purchased this strip from Mrs. Catherine Handy and was preparing and had arranged "to build a house on the premises," and that defendant, "on or about the —————— day of October, 1906, did wrongfully and unlawfully seize and enter into the possession of the above-described premises and incumbered a part of the same with a house and a wire fence, and continues in the possession of the same adversely to the plaintiff, after demand has been made by the plaintiff to the defendant in writing for the possession of the premises." Averring that he is entitled to the immediate possession of the above described premises and has been damaged by the unlawful seizure and detention in the amount of $25, plaintiff prays judgment of restitution and for damages and the value of the rents and profits of the premises. His petition was sworn to on the fourth of February and was served on the defendant the same day, so that it was undoubtedly filed with the justice on the fourth of February, 1907, although the date of filing does not appear in the transcript, which it should always do in actions where time is at all material, as it is in cases of this character. A trial before the justice resulted in a verdict for plaintiff and defendant appealed to the circuit court. At the close of plaintiff's evidence the defendant asked for an instruction in the nature of a demurrer to the evidence which was overruled, defendant duly excepting. Defendant thereupon proceeded with his testimony, and plaintiff introduced testimony in rebuttal. At the conclusion of the trial, the court having given several instructions for both parties, the jury returned into court a verdict in the following form: "We, the jury, find that the plaintiff, J. A. Milem, is entitled to the possession of the

strip of ground sued for." On this verdict the court entered judgment for restitution of the premises and for costs and ordered execution to issue accordingly. After unsuccessful motions for new trial and in arrest, exception being duly saved to the action of the court in overruling them, defendant prosecuted his appeal to this court, assigning here, as he did in his motion for new trial, among other grounds, that there is no substantial evidence in the case warranting the jury to return a verdict in favor of plaintiff. We have consequently read all the testimony contained in the transcript, not being satisfied to rest our action upon the abstract furnished by counsel for the respective parties, and have reached the conclusion that there is no substantial evidence in the case warranting its submission to the jury.

The facts developed on the trial are substantially these: What is claimed to be this strip of ground in controversy lies to the east of the lots in block 7, in the city of Sikeston; in the plat above copied, it is the piece colored black, adjacent to the lots in block 7. These lots are not numbered on the plat used, so that we cannot say whether lots 2 and 3, which defendant claims to occupy, are the two south or two north lots in the block. The city of Sikeston was laid off and platted by John Sikes, in 1860, Sikes then being the owner of United States survey No. 625, the townsite being platted as within that survey. There seems to have been some change or correction of the lines of the original town when the city of Sikeston was organized and the city authorities of the new town appear to have adopted and approved a plat of the city with its new boundaries. The plat furnished us by counsel for respondent, however, shows that the strip in controversy is within the limits of the city of Sikeston, and all the testimony in the case bounds it on the north by Front street and on the east by King's highway (also a street in that city) and there is no suggestion that it was not within the

limits of the town of Sikeston as originally platted
and laid off in 1860 by John Sikes.  Mrs. Sikes, now
Mrs. Handy, appears to have been the owner of survey
No. 625, and while it is stated in the petition that she
sold this strip as being part of that tract to the plain-
tiff, on the sixth of October, 1906, there is no testimony
whatever in the record fixing this date, the only testi-
mony being that her son, Need Sikes, had acted for his
mother in selling it to the plaintiff at some time prior
to the institution of the suit but the date of the sale not
appearing anywhere.  If it was on the sixth of October,
1906, as averred in the declaration, then it was just four
months before the institution of this action.  The ques-
tion of the date of the sale and conveyance, however,
or the fact of a conveyance, has no bearing on this case,
any further than that plaintiff claims the benefit of the
acts of Mrs. Handy, as showing her possession, and of
course to do that, he must show some privity—either
as grantee, tenant or agent, to enable him to do so.  Be-
yond the statement that he did purchase of her and the
testimony of her son, that acting for his mother he had
sold this strip to plaintiff, this is not shown.  The case
technically then, should turn on the fact of possession
in plaintiff himself.  As no point is made on this, how-
ever, we treat the case as if it had been in evidence
that plaintiff is owner by deed from Mrs. Handy, and
give him the benefit of her acts of possession if she did
any.  It appears from the testimony in the case that the
defendant was the owner of lots 1 and 2 in this block 7.
As before noted, whether 1 and 2 are the north lots or
the south lots in block 7, is not shown by the testimony.
It is not very material, however, to determine what is
the position of the two lots he owns, as in any event
what is claimed as this strip runs along all three of
the lots in this block as will be seen by the plat.

These lots, as shown in the plat, have a front of for-
ty feet and a depth of one hundred and twenty feet.  The
defendant claims, however, that the description in his

Milem v. Freeman.

deed, which deed is not in evidence, carries his lots across and over this strip. Of course, in an action of this kind, whether defendant has title by deed to the premises in dispute, is not material, the question being one of actual occupancy or possession. It is sufficient to say that defendant claims not only that his lots run back to King's Highway, and so take in all that part of them colored black on the plat, lying between the line drawn through them, which we have marked A, B, and King's Highway street, but he also claims that he and those under whom he claims have exercised acts of ownership and been in actual possession of the property clear through to King's Highway, under the claim that the west line of that street is the eastern boundary of his lots. The case of the plaintiff in this case rests on the claim, that he and his grantor, Mrs. Handy, formerly Mrs. Sikes, have been in the actual possession of this strip for more than three years continuously, immediately before the institution of this suit and, necessarily, it is claimed by plaintiff, that the defendant was not in possession of it during that period, the claim also necessarily resting on the further proposition that defendant had, within that period, unlawfully entered upon and taken possession and disseized plaintiff. Several witnesses testified that Mrs. Sikes, or Mrs. Handy, had been "considered in possession" for many years prior to the institution of the action, regarding it as part of United States survey 625, but when brought to the test of fact and not of opinion, the only act in evidence that can be pretended to be an act of possession, is that sometime in July, 1906, Need Sikes, son of Mrs. Handy, formerly Mrs. Sikes, had Mr. Warner, a surveyor, survey this strip. The mere fact of a survey, accompanied by no other act, was no act of possession or assertion of ownership, although it appears from the testimony of her son that nobody objected to the survey being made. Whether they objected or not is utterly immaterial, unless it is shown that the defend-

ant was present at the time of the survey and saw it and made no objection to it or assented to it, or that in some way a knowledge of the fact of the survey was brought home to him, and he made no objection. That was not done in this case. Neither Sikes nor Warner, the surveyor, pretended to have put up any monuments, marks, corners or other visible sign of occupancy or possession. It is claimed by the learned counsel for the respondent that this court has decided in the case of School District v. Holmes, 53 Mo. App. 487, that the act of surveying is an act sufficient to constitute actual possession. That decision does not so hold. What is held by Judge BIGGS, who delivered the opinion in the case, is that a survey accompanied by the planting of corner stakes were acts of possession. After referring to the cases of DeGraw v. Prior, 53 Mo. 313; Bartlett v. Draper, 23 Mo. 407; Miller v. Northrup, 49 Mo. 397, and Bradley v. West, 60 Mo. 59; Judge BIGGS says: "Under these decisions it would seem that the survey and the establishment of the corners by the directors were sufficient to constitute actual possession of the entire acre in plaintiff." When we examine the facts in School District v. Holmes, supra, we find them materially different from the facts in the case at bar. As appears by the statement of Judge BIGGS in that case, the directors of the district "went upon the land, and surveyed and marked off a square acre with the schoolhouse in the center. Corner stakes were planted to show the boundaries. Previous to this nothing had been done by the officers of the district to indicate the extent of their holding, beyond the ground actually covered by the house." In the DeGraw case, the plaintiff entered upon and plowed up an acre and a half of the ground; in the Bartlett case, plaintiff had planted fence posts on three sides of the lot; in the Miller case, the plaintiff had established the corners and cut hay upon the land; in

the Bradley case, plaintiff had traced out the boundaries, threw up mounds at the corners of part of the land and when defendant came upon the land he ordered him off, asserting that the land belonged to him.

This case, therefore, presenting the fact of a mere survey, unaccompanied by any acts indicating that it had been made, is in no manner parallel to any of these cases. For anything that appears to the contrary, young Sikes and the surveyor may have gone on the land at night. They left no *indicia* of their survey, established no corners, set up no marks and left no trace whatever of their presence. For all that appears, their going on and surveying were the acts of casual trespassers. That was not a visible act of possession, was not an act which would have notified defendant, or any one else, that his possession,· if he had it, was being interrupted and interfered with.

The testimony of Need Sikes and others, that his mother claimed this strip by virtue of her ownership of United States survey No. 625, and that it was a part of that survey, and always considered her property, is without probative value on the fact of possession. In the first place, the claim that it was a part of survey 625 cannot stand. When John Sikes, in 1860, laid off and platted the town of Sikeston, he separated all the land within the boundaries of the town from the survey and it thereafter became or belonged to Sikes, not as a part of survey No. 625, but as a part of his property within the boundaries of the new town of Sikeston, and if this particular strip remained unsold and undisposed of from the time of the platting of that town down to the selling of the strip to Dr. Milem, the plaintiff in the case, it belonged to the Sikes estate, not as part of the survey but as part of the town, so that the claim of ownership by virtue of being owner of survey 625 is untenable. In the next place, the mere statement of witnesses that Mrs. Handy, or Mrs. Sikes, was recognized as the owner and considered the owner and consider-

ed to be in possession, amounts to nothing whatever and has no probative force in a case of this kind, for titles to land, or the right of possession, or the fact of possession, are not determined by public rumor or presumptions or claims of this character. The fact of possession, in a case of this kind, is the very fact for determination by the jury, and that fact must be determined by the jury on evidence of acts, by proof of physical facts, and not on supposition or ideas or thoughts. When we consider this claim of possession by Mrs. Handy of this strip, by virtue of her possession of survey 625, we can understand why the strip is described in the petition as part of the survey instead of as a parcel in the city of Sikeston.

The only act of possession claimed to have been exercised by the plaintiff himself, after he purchased the lot from Mrs. Handy, is that he caused a couple of loads of dirt to be dumped upon the land some time in December, 1906. The plaintiff testifies that he did this the day the defendant moved his chickenhouse around on to the strip and after he had seen him doing that, and he said that this was all the work he had ever done on the strip. The point of this reference to the act of moving this chickenhouse is, that it appears that when the question came up as to the right to this strip, and the attention of the defendant was called to the fact that the plaintiff claimed it, but before these loads of dirt were dumped, as plaintiff himself admits, defendant ran a wire fence around it, a fence made out of ordinary netting wire, such as is ordinarily used for inclosing chicken yards and the like, of course a mere temporary structure, evidently put up for the express purpose of making defendant's claim of possession, and also moved or turned on to the strip a chickenhouse which was on or adjoining what is claimed as the west line of this strip, so that the taking possession of this strip by the plaintiff, evidenced by dumping the two or three loads of dirt was after the controversy had arisen and after

plaintiff saw that trouble was likely to arise. It was done for the express purpose of and in an effort to create the possession in plaintiff. Plaintiff, testifying to what other act he had done as indicating possession, says that two or three days before defendant switched his chicken-house around and put up this wire netting, he (plaintiff) had been consulting with a carpenter about erecting a building on this strip, and he produced the carpenter as a witness to corroborate this rather remarkable intention. What sort of a building could be erected on a strip twelve and a half feet wide and running back one hundred and twenty feet, to a point scarcely measurable on land, seven-eighths of an inch, "running to a point," as plaintiff himself said, might cast a doubt on the good faith of the expressed intention. But intention, whether entertained or not, is not an act of possession. We are therefore led to the conclusion that plaintiff's evidence did not prove possession by himself or those under whom he claimed. On the contrary, the testimony of plaintiff's own witnesses show that for more than three years preceding the institution of this action, "for many years," said plaintiff, the defendant and those under whom he claims had driven over this strip to get to the buildings on the lots in this block 7. They would have to drive over it when they hauled coal to the buildings. Asked if the occupants of the buildings would not have to haul over this strip to get anything to them, he said, "Well, it was all hauled there." There was a platform extending back on to the strip from one of the buildings of defendant, a loading platform, that had been there certainly for more than three years prior to the institution of this action. Mr. Sikes, a witness for plaintiff, testified that for over three years a building extending on to this strip, east of defendant's buildings, had been used for a tin shop and other purposes. Mr. Norrid, another witness for plaintiff, testified that this strip had been at times covered by an outhouse, part of the time by a platform; that the super-

structions on it were controlled by the owners of lots 2 and 3, under whom defendant held, and that the strip had been used as a passage way ever since he had known it, which was from about 1901. All these witnesses testify that the strip was used for ingress and egress by the owners of lots 2 and 3, for receiving and delivering merchandise at and from the stores and buildings situated on these lots. These constitute visible acts of possession; were acts indicating possession; actual, visible, tangible acts evidencing possession, and extending over a period of more than three years. Our conclusion on the whole case is that there is no substantial testimony warranting a verdict for the plaintiff. The instruction to that effect, at the close of plaintiff's case, should have been given by the trial judge, and presented to us as it is, both by the motion for new trial and in the assignment of error, we have no hesitancy whatever in saying that it should have been sustained. It is true that after the demurrer was overruled, defendant put in his evidence. We have, therefore, determined the question as to the propriety of the refusal of this demurrer in the light of all the evidence, that offered by plaintiff as well as by defendant. [Klockenbrink v. Railroad, 172 Mo. 678, l. c. 683.] The right, no less than the duty, of this court to reverse for lack of substantial evidence in the case, considering all of it, to sustain a verdict, is beyond question. [Finkelnburg, Missouri Appellate Pr. (2 Ed.), pp. 158 and following; Buck v. Endicott, 103 Mo. App. 248; Dowling v. Wheeler, 117 Mo. App. 169, l. c. 182; Casey v. Transit Co., 186 Mo. 229, l. c. 232; Weller v. Wagner, 181 Mo. 151, l. c. 159.] A verdict must have substantial support. [Blanton v. Dold, 109 Mo. 64, l. c. 69.] Furthermore, in this case the verdict of the jury is so entirely contrary to the testimony of the witnesses in the case, even those of the plaintiff himself, that it tends strongly to the suspicion that it disregarded all of the testimony, and that the result was brought about, not by a consideration of the law and of the evi-

dence, but from prejudice, passion or some occult reason not appearing in the record. We say this, in no manner denying the undoubted right of a jury to determine on the credibility of witnesses, and the almost unlimited power lodged in the trial court to pass on the weight of the testimony. But an appellate court has the power, as it is its duty, to interfere when it appears that injustice has been done. [Bank v. Wood, 124 Mo. 72, l. c. 77, and citation there made of Iron Mountain Bank v. Armstrong, 92 Mo. 265, l. c. 280.] While we are strongly inclined to the belief that this is a case in which we would be justified in so doing, we do not place our judgment here on that ground however, nor in the exercise of that power, but place it on the proposition that that verdict is unsupported by any substantial evidence in the case, and is unwarranted under the law. Reaching the conclusion we have, it is unnecessary to review, examine or criticise rulings made during the progress of the trial, or the action of the learned trial judge in giving or refusing instructions other than that for a verdict for defendant on the evidence.

The judgment of the circuit court of Scott county is reversed. All concur.