HAMILTON DeGRAW, Respondent, *vs.* WILLIAM PRIOR, Appellant.

1. *Forcible entry and detainer—What questions may be passed on by the jury.*— In suit of forcible entry and detainer the question what acts constitute possession is for the court, and whether they have been done is for the jury. And the court may, under proper instructions, leave the whole question to the jury where there is any evidence tending to show a *bona fide* prior possession by plaintiff.

2. *Forcible entry and detainer—Possession of plaintiff must be bona fide and not a mere sham—Instances.*—Possession of land to authorize an action of forcible entry and detainer must be *bona fide* and not a sham.. Thus, where plaintiff was driven off by stress of weather and returned when permitted, such temporary absence will not defeat his action. On the other hand, where he attempted to get possession in order to throw the *onus* of a suit in ejectment on another, by simply going on the land and plowing for half a day or so and then absenting himself for six months or more, one entering on the land at that time would have a right to presume that his project had been abandoned.

### *Appeal from Carroll Circuit Court.*

Instructions Nos. 6 and 7 referred to by the court were as follows :

VI. The court instructs the jury that there is no evidence tending to show that the Websters ever took possession of the land in question under the contract for a deed which was read in evidence; and that in the absence of such evidence the said contract for a deed cannot affect any right to recover which plaintiff may have under the evidence in this case.

VII. If the witness Hill, under the agreement which has been read in evidence, went upon the land in question in July, 1868, and plowed five-eighths of an acre, or thereabouts, for the plaintiff, and with the view to take possession of the same for plaintiff, and if he temporarily quit the plowing for any reason, intending to continue the same, and if in the meantime and in the fall of the same year, defendant had the house built thereon, then such facts are not of themselves sufficient to prove an abandonment by the plaintiff of his possession, and if defendant relies upon such abandonment he must prove the same by a preponderance of evidence.

*Roy & Roy,* for Appellant.

I. While the law protects those who honestly and in good faith take the actual possession of and make real improvements on land, it will refuse protection to mere gamblers in land, who cause to be instituted sham proceedings, possession or improvements. (Crispen vs. Hannavan, 50 Mo., 536, 548; Chapman vs. Templeton, 53 Mo., 463.)

*L. H. Waters,* for Respondent.

I. It was not necessary that plaintiff should remain upon the land, or that he should keep any one there. If his acts done upon the land indicated an intention to hold possession in himself, he could recover. (Bartlett vs. Draper, 23 Mo., 107; Humphrey vs. Jones, 3 Monr., 261; Chiles vs. Stevens, 1. A. K. Marsh., 333; see, also, Powell vs. Davis, 54 Mo., 15; Langworthy vs. Meyer, 4 Iowa, 18; Miller vs. Northrup, 14 Mo., 397.) Whether the defendant was in the actual possession at the commencement of this suit was a question of fact for the jury. (DeGraw vs. Prior, 53 Mo., 313.)

NAPTON, Judge, delivered the opinion of the court.

In these actions for forcible entry and detainer, the facts of the cases decided have been so variant, that it is difficult to deduce any general principle or rule from them.

What acts constitute possession is certainly for the court to decide—whether the acts have been done is for the jury; and the court may, with propriety, leave the whole matter to the jury, under proper instructions, where there is any evidence tending to show a *bona fide* prior possession.

Heretofore the court has gone very far in this direction; but if we go back to the case of Kincaid vs. Logue, (7 M. R., 167) it would be very plain that the plaintiff in this case had no possession of the land when the defendant made his farm of 70 acres on it.

In Kincaid vs. Logue, the plaintiff ran a worm fence round 200 or more acres, laid upon a worm with one, two,

three, or sometimes four rails; and the idea of such an enclosure being called a fence was ridiculed by Judge Tompkins.

Here the plaintiff employed a man to plough a part of a day and break up in the half section some $1\frac{1}{2}$ acres, in the quarter now in controversy, some $\frac{5}{8}$ of an acre, in the summer of 1868. The agent of plaintiff then left, and in the fall of 1868, the defendant had built on the land a cabin, either as agent of his son who had a deed for the land, or on his own account; and in the spring of 1869, enclosed and cultivated 70 acres. Neither the plaintiff nor any one for him ever had any further connexion with the land after the month of July, 1868, when he broke up, or ran a plough over, $\frac{5}{8}$ of an acre; and this ploughing was held by the jury, under instructions from the court, as a possession of the land. It does not appear that either party had any title, though both claimed under deeds.

The first and second instructions asked by the defendant should have been given or the substance of them. They are merely declarations of the law, as stated by Judge Bliss in Crispen vs. Hannavan (50 Mo., 536), and instructed the jury that the possession, to enable a party to maintain forcible entry and detainer, must be *bona fide*, and not a mere sham.

There is no doubt of the correctness of the rule laid down by Judge Adams. when the case was here before, that "a temporary absence does not deprive the possessor of his right." (53 Mo., 316.) But in this case the absence was not temporary—it was final.

There was nothing to hinder plaintiff from going on with his work in the fall, so far as appears, yet nothing further was done until this suit was brought, after defendant had made a large farm on the land, either for himself or his son.

It is difficult to maintain that this action was properly brought against the defendant. He bought the land, it is true, but took the title to one of his sons. He lived in another county, and although he paid for the land and advanced all the money to make the improvement, it was all done for his son, in whose name the land was bought. He, himself, was

seldom on the land. He had another son, a negro man and another person, named Thompson, in possession. This point is not, however, material, and really has nothing to do with the merits of the case.

The 6th instruction given for the plaintiff was wrong. It leaves the question of possession entirely to the jury.

The 7th instruction properly instructs the jury, that certain facts constituted possession and if the facts had been so stated as not to mislead, and accompanied with the counter instructions asked by the defendant, the verdict would have been allowed to stand. If the plaintiff merely desisted from plowing by reason of bad weather, and returned again when the weather allowed, and was driven off on his return by threats or force (as he intimates in his evidence), he was entitled to his action. But where a man attempts to get a possession, in order to throw the *onus* of an action of ejectment on another, by merely going on the land and ploughing for half a day or so, and the subsequent improvement is not made until six months thereafter, such possession has very much the appearance of being merely nominal and the subsequent trespasser has a right to suppose, if he observes the plough marks at all, that the project has been abandoned. This however is a question for the jury.

The judgment is reversed and the case remanded; the other judges concur, except Judge Sherwood, who is absent.