## C. C. UNDERWOOD, Respondent, v. CITY OF CARUTHERSVILLE, Appellant.

### St. Louis Court of Appeals, May 8, 1917.

1. **TRIAL PRACTICE:** Improper Remarks of Counsel. On retrial of a case, after the judgment rendered on a former trial had been reversed and the cause remanded by the appellate court, *held* that remarks made by one of the counsel in his argument to the jury, respecting the action of the appellate court in reversing the judgment, were highly improper.

2. **APPELLATE PRACTICE:** Former Decision: Law of Case: Exceptions to Rule. While, as a general rule, conclusions announced by the appellate court on a first appeal become and remain the law of the case, not only upon a retrial, but also upon a second appeal, nevertheless questions adjudicated upon the former appeal will be reconsidered, where there are cogent and convincing reasons for doing so, and especially where the former ruling inadvertently nullified a statute, overruled some sound and well-settled principle of law, or inadvertently misconstrued a decision of the Supreme Court.

3. **FORCIBLE ENTRY AND DETAINER:** Possession: Question for Court. In a forcible entry and detainer suit, the effect of the acts that go to make up the character of the possession alleged to have been disturbed is a question for the court; following De Graw v. Prior, 60 Mo. 56.

4. ————: ————: ————: **Facts Stated.** In an action of forcible entry and detainer, it appeared that the land in controversy was a small strip between two lots owned, respectively, by plaintiff and defendant city, and that a city building had, for several years prior to the alleged forcible entry, occupied a portion of this strip. Plaintiff testified that, for a number of years, he had used the portion of the strip, not occupied by the city's building, for storing coal, and that he and members of the public buying coal from him had driven over a portion of it. It further appeared that, at one time, plaintiff constructed a sort of fence, or "bulkhead," extending a short distance along the line between defendant's lot and the strip in dispute, but this "bulkhead" fell down and disappeared long prior to the time in question. Defendant removed its building located on this strip, for the purpose of using the strip as part of a city hall site, and plaintiff thereupon erected a fence inclosing the strip, under a claim that the strip belonged to him. Defendant's agents removed this fence and took

possession of the strip, which acts constituted the forcible entry and unlawful detainer complained of. *Held*, that, in view of the rule that, in forcible entry and detainer suits, the question of what acts constitute possession is for the court, the trial court should have directed a verdict for defendant, since the evidence shows that defendant had had possession of the land in controversy for several years prior to the alleged forcible entry, that plaintiff never acquired open, equivocal and well-defined possession, and that, whatever possession he had, was a mere "scrambling possession," which the law will not recognize or protect; overruling Underwood v. City of Caruthersville, 184 S. W. 486.

5. ———: ———: ———: ———. The fact that plaintiff, from time to time, dumped coal upon the disputed strip and that he and those dealing with him sometimes drove across it, did not show such possession as is necessary to maintain the action.

6. ———: ———: ———: ———. Plaintiff did not undertake to inclose the strip with a fence; the so-called "bulkhead" not being a fence nor extending entirely across the vacant portion of the strip, and, in view of the fact that it disappeared entirely, leaving nothing to definitely determine the boundary line, any physical possession arising by virtue of it was abandoned.

7. ———: ———: ———: ———. The fence inclosing the strip, erected by plaintiff after defendant removed its building, having been erected solely or primarily to secure some advantage in the expected forcible entry and detainer action, cannot be made the foundation of possession; the possession obtained thereby being a mere "scrambling possession," in the enjoyment of which the law will not protect plaintiff.

8. ———: ———: Erection of Fences. While, in an action of forcible entry and detainer, it is not always essential that the one claiming possession of the land inclose the same with a fence, nevertheless where the disputed land lies between two adjoining city lots which had never been separated by a fence, it is essential that plaintiff's possession be manifested by something definitely and unequivocally establishing the extent of the occupation.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Peter H. Huck*, Judge.

REVERSED.

*Vance J. Higgs* and *A. Sloan Oliver* for appellant.

*C. G. Shepard* for respondent.

(1) Under the law of Missouri, as it has been written from the very first utterance of our Supreme Court

down to the present time, the possession of plaintiff was such possession as the law will recognize and protect. It has been repeatedly stated by the appellate courts of this State that the party need not actually be on the land, or keep servants there, but any act done by him on the premises indicating intention to hold possession thereof to himself, is sufficient to maintain the action. Prendergrast v. Graverman, 166 Mo. App. 33; Robinson v. Ramsey, 190 Mo. App. 206; Milem v. Freeman, 136 Mo. App. 106; Bradley v. West, 60 Mo. 59; McCartney's Adm'rx et al. v. Alderson, et al., 45 Mo. 35; Catchcart v. Walter, 14 Mo. 18; Dennison v. Smith, 26 Mo. 487; Powell et al. v. Davis et al., 54 Mo. 315; Willis v. Stevens, 24 Mo. App. 494. (2) If plaintiff was wrongfully in possession of the property in dispute and defendant entitled to the possession thereof, then defendant should have brought its legal proceedings against plaintiff for the possession of said property, and should not have attempted to adjudge its own rights. The law does not permit a party to redress his grievance with his own hand, and if he does so redress it, the law will undo the work, and place the parties as they were before the entry. Stewart v. Miles, 105 Mo. App. 242; Kravet v. Meyer, 24 Mo. 107; Robinson v. Walker, Ex'r of Walker, 50 Mo. 19; Sitton v. Sapp, 62 Mo. App. 197; Craig v. Donnely, 28 Mo. App. 342; Redman v. Perkins, 122 Mo. App. 168. (3) Actual, peaceable possession was all that was required upon the part of plaintiff in order to enable him to maintain this suit. The right of his possession is not and cannot be a matter in issue. Compton v. Baker, 34 Mo. App. 138; Meriweather v. Howe, 48 Mo. App. 148; Van Enman et al. v. Alex H. Walker, et al., 47 Mo. 169. (4) There need have been no intentional wrong on the part of defendant to permit plaintiff to recover in this action. The whole question is, was plaintiff in the peaceable possession of the property in question, and did defendant intrude upon that possession? Stark v. Martin, 126 Mo. App. 571. (5) Constructive possession on the part of the city by reason of having title to the property, even should it be admitted that it

had title, was not sufficient to give it the right to enter upon the possession of plaintiff, even though his possession be wrongful. Walser v. Graham, 60 Mo. App. 323. (6) Plaintiff Underwood having purchased the property under foreclosure sale was not a trespasser, even should it be admitted he failed to get title at the sale. Dunnington v. Hudson, 217 Mo. 93. (7) Under the law of Missouri a trespasser when in the actual, peaceable possession of property, can maintain forcible entry and detainer proceedings against the rightful owner who has wrongfully entered in and ousted him of his possession. Rochester v. Gate City Mining Co., 86 Mo. App. 447. (8) Under the law of Missouri the party forcibly entering upon the possession of another and dispossessing him is liable for all damages occasioned thereby, and in cases less aggravating than the case at bar punitive damages have been allowed. Certainly defendant has no right to complain at the small damages allowed against it in this case. Wamsganz v. Wolff, 86 Mo. App. 205; Leahy v. Lubman, 67 Mo. App. 191; Eads v. Wooldridge, 27 Mo. 251; Silvey v. Summers et al., 61 Mo. 253.

BECKER, J.—This is an action for forcible entry and detainer. Plaintiff had judgment before a justice of the peace of Pemiscot county, and upon defendant's appeal to the circuit court of that county, there was a verdict and judgment for defendant, and plaintiff thereupon appealed to this court. Under the provisions of section 3939, Revised Statutes 1909, the appeal was by this court transferred to the Springfield Court of Appeals, which court rendered a decision in the case. [See Underwood v. Caruthersville, 146 Mo. App. 288, 129 S. W. 1076.] Thereafter the supreme court held the above-mentioned section to be unconstitutional and void (see Dunham v. Nixon, 232 Mo. 98, 133 S. W. 336), and the cause was thereupon retransferred to this court, where, under the ruling of the Supreme Court, the jurisdiction of the appeal continued to reside. Thereafter this court adopted the opinion of the Springfield Court of Appeals, and accordingly reversed the judgment and remanded

the cause. [See Underwood v. Caruthersville, 160 Mo. App. 619, 140 S. W. 1199.] It appears that, after the cause had been remanded to the circuit court of Pemiscot county, a change of venue was taken by plaintiff, and the case was sent to the circuit court of Dunklin county, where a trial resulted in a verdict and judgment for defendant; but the court set the judgment aside for error thought to have been committed at the trial. Thereupon a change of venue was granted the defendant, and the cause sent to the circuit court of St. Genevieve county, where a trial before the court and a jury resulted in a verdict and judgment for plaintiff. Defendant appealed to this court where the case was reversed and remanded. [184 S. W. 486.] A retrial of the case in the circuit court of St. Genevieve county resulted in a verdict and judgment for plaintiff, from which judgment the defendant appealed.

Counsel for respondent, defendant below, admits in his statement and brief that "there is but little difference in the record as to the substantial testimony given at each trial of the case." We have carefully examined the statement of facts as set forth in the opinion on the last appeal and find same an excellent, full and fair exposition of all the needed facts in the case. We find no reason to change any part thereof. Said statement is as follows:

"The property in question consists of a strip of land thirty five feet in length and twelve feet in width, in the city of Caruthersville. It appears that the defendant had for many years been in possession of a lot in the city of Caruthersville upon which stood the city's public buildings, fronting approximately south on George street, as we understand the small plat before us. Plaintiff claimed to be the owner and in possession of a lot lying immediately north and in the rear of defendant's said lot. The strip of ground in controversy lies along the dividing line between these two lots. Defendant's city hall and jail stood upon its lot, and there was a small building in the rear thereof, referred to as the engine house, used for storing the city's fire apparatus, which

occupied a strip of land sixteen feet in length and eight feet wide, being a part of the total strip in controversy. Plaintiff used his lot for the purposes of storing coal, in which he dealt, and had thereupon wagon scales with which he did public weighing. His testimony tends to show that he purchased his lot in 1904, and that thereafter he made some use of a strip of the land here in controversy, i. e., that portion thereof not covered by defendant's engine house above mentioned, by placing coal thereupon from time to time, and that in the course of his business he, and the members of the public dealing with him, drove over a portion of it. And it appeared that plaintiff constructed a "bulkhead" to hold his coal in place, which stood on or about the south line of this strip in dispute, but which appears to have extended but thirteen feet along this line. Later this "bulkhead" fell down, and it seems to have disappeared altogether long prior to the alleged entry of defendant complained of. In the latter part of 1906 and early in the following year, the defendant removed its buildings from its lot, for the purpose of erecting a new and larger city hall building. Shortly after the removal of the engine house, plaintiff, in March, 1907, erected a fence upon what he claimed to be the line of his lot, inclosing with his land the strip in controversy. This fence was erected at night or early one morning, when defendant had begun, or was about to begin, excavating for the foundation of the new city hall. Defendant's agents tore away this fence and took possession of the strip of ground in controversy for the city's purposes. At this time plaintiff had, according to his testimony, from five to seven tons of coal upon the ground formerly occupied by the engine house, and this defendant removed. Litigation followed with which we are not here concerned: though it may be stated incidentally, that the record discloses that plaintiff was restrained from replacing the fence, and that defendant proceeded to and did build its city hall upon this strip at or near the northern line thereof." ı

1. One assignment of error pertains to a certain remark made by plaintiff's counsel in his closing argument

to the jury, respecting the action of this court in reversing the judgment on the last appeal. The language used is unworthy of space herein and will not be set out. It is sufficient to say that the remark was highly improper and the making thereof reprehensible. The trial court mildly reprimanded plaintiff's counsel but the latter did not avail himself of the opportunity to make proper apology. In the view which we take of the case it is unnecessary to say more regarding this assignment of error and we consequently pass to the merits.

2. ALLEN, J., when this case was here on the former appeal (184 S. W. 486) was of the opinion that the plaintiff had made no case for the jury and that the case should be reversed outright. However, his brother judges, while they concurred in the opinion written in the case by him, as to the errors noted as occurring at the trial, held that the question of plaintiff's possession was a matter for the jury and not a question to be disposed of by the court as a matter of law. This holding on their part necessarily reversed and remanded the cause.

While it is true, as a general rule, that legal conclusions announced on a first appeal become and remain the law of the case, not only upon a retrial, but also upon a second appeal, yet this rule is not without exceptions. Our supreme court has repeatedly reconsidered questions adjudicated upon from appeals where there were cogent and convincing reasons for doing so, and especially has this been the case where the former ruling inadvertently overruled and nullified a statute, or overruled some sound and well settled principle of law. [Bagnell v. Railway, 242 Mo. l. c. 21, 145 S. W. 469; Citizens Nat'l. Bank v. Donnell, 195 Mo. 564, 94 S. W. 516; United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133; Padgett v. Smith, 205 Mo. 125 103 S. W. 942; Wilson v. Beckwith, 140 Mo. l. c. 382, 41 S. W. 985; Mangold v. Bacon, 237 Mo. 496, 141 S. W. 650; De Ford v. Johnson,—Mo.—, 177 S. W. 577.] And where on a later appeal this court finds that its decision on a former appeal of the case has inadvertently misconstrued a decision of the supreme court, and its decision is therefore in conflict with such

decision of the supreme court, it is not only its duty, but such court is bound under the law to reverse its former decision to conform to such controlling opinion.

On a re-examination of the question whether plaintiff's possession is one to be disposed of as a matter of law by the court, or as a question of fact for the jury's determination, we now conclude that the case of De Graw v. Prior, 60 Mo. 56, which is followed in Scott v. Allenbaugh, 50 Mo. App. 130, and in Robinson v. Ramsey, 190 Mo. App. 206, l. c. 211, 176 S. W. 282, is conclusive of the question. It is therein held, in an opinion written by NAPTON, J., that in a suit of forcible entry and detainer, the question of ''what acts constitute possession is certainly for the court to decide—whether the acts have been done is for the jury; and the court may with propriety leave the whole matter to the jury upon proper instructions, where there is any evidence tending to show a *bona-fide* prior possession.''

We therefore hold that the majority view on this question as announced in this case on the former appeal, supra, should be and is hereby overruled. We now hold that the effects of the acts which go to make up the character of possession is a question for the court, and we therefore hereby adopt as the law in this case the following portion of the opinion written by ALLEN, J., in the former appeal:

''The writer is of the opinion that plaintiff made no case for the jury, and that our order should be one of outright reversal.''

''The undisputed facts show that defendant had possession for some years of this entire strip of land in controversy. Indeed, the city's engine house was built upon and occupied for years a very considerable part of it. This engine house was connected with the city hall; that is, as plaintiff himself testified, 'It was joined on the end corner room of the city hall.' The two lots, belonging respectively to plaintiff and defendant, are rectangular in shape, as are the other lots in this block. The fact that the city's buildings covered the greater part of one end of this strip of land was notice to plaintiff, and to every

one else, that the city's possession extended at least to the rear wall of the engine house. When plaintiff purchased his lot, he fenced it on three sides, but did not place a fence between his lot and that of defendant. It appears that he did place, on or about the line which he has asserted to be the true line, a "bulkhead," extending for a short distance only, and intended to support coal which he might store upon the premises. It was evidently a simple affair, made of planks to prevent the coal from rolling about. It did not extend across the entire lot to the engine house, and it does not appear that it was put up as and for a fence, in order to define a possession then claimed by plaintiff, but merely to support his coal. It fell down, and it is conceded that it had been removed or had disappeared altogether prior to the time of the erection by plaintiff of the fence in March, 1907.

"Respondent contends that plaintiff had been in possession of this strip of ground, exclusive of that occupied by the engine room, for a period of more than two years by reason of his use thereof in connection with his coalyard. But it does not appear that plaintff's acts in this connection were of such character as to give him a possession which the law will recognize and protect under the circumstances. It was an open, notorious, and visible fact that defendant's buildings extended over and stood upon one end of this trip. Its occupancy of its lot was such originally as to carry with it the possession of the entire lot, including the strip in controversy. After plaintiff had acquired the lot in the rear of defendant's lot, he began, according to his testimony, to dump coal upon a part of that portion of the strip not occupied by the engine house. As plaintiff said, no one objected to this.

"Granting that plaintiff from time to time dumped coal upon some of this ground, and that he and those dealing with him drove over some of it from time to time, these acts do not appear to show such possession, under the circumstances, as to entitle plaintiff to maintain this action. In suits of this character, what acts will constitute possession is a matter for the courts. [De Graw v. Prior, 60 Mo. 56.] And the facts shown in evi-

dence do not make it appear that plaintiff ever acquired open, equivocal, and well-defined possession of this land.

"After acquiring his lot, plaintiff did not undertake to inclose this strip therewith by a fence, or otherwise definitely establish the line later claimed by him to be the true line. The so-called bulkhead (to which plaintiff sometimes refers in his testimony as a bulkhead fence) was, as said, not a fence at all. It did not extend entirely across the vacant portion of the lot, and was evidently not intended to mark the boundary of the possession claimed by plaintiff. Its purpose was merely to prevent plaintiff's coal from rolling about. And it later disappeared altogether, leaving nothing to definitely determine the boundary line. Any physical possession arising by virtue of it was abandoned. [Dyer v. Reitz, 14 Mo. App. 45.] And there is no testimony that at the time of defendant's alleged entry there was any coal on that part of the strip. There were, as said, a few tons of coal on the end of the strip which was formerly occupied, for the most part, by the engine house. This coal had been placed there after the removal of the building, and before the work of excavating began. And defendant's witnesses testified that it was put there after plaintiff had erected the fence in March, 1907.

"It seems that the only physical posesssion obtained by plaintiff, by virtue of his trespasses upon this land, that was of a definite and exclusive character, was that acquired by the erection of the fence in March, 1907. This was evidently the view taken in the opinion on the former appeal, for it is said:

'When plaintiff built the fence, that gave him the physical possession of the land, and, if the law will recognize and protect that possession the defendant could not forcibly enter and oust him, but if it be true, as indicated by some of the testimony, that plaintiff erected the fence solely for the purpose of securing some advantage in expected litigation between him and defendant, then his pretended possession can avail him nothing and the law will leave him where it found him.' [Underwood v.

Caruthersville, 146 Mo. App. l. c. 294, 295, 129 S. W. 1078.]

"Upon the facts of the record before us, this view appears to be eminently correct, and ought to be adhered to.

"It is true, as learned counsel for respondent asserts, that it is not always essential in cases of this character that one claiming possession of land inclose the same by a fence. The extent of the occupation may otherwise sufficiently appear. But this is a controversy between the owners of two adjoining city lots, which, so far as this record shows, had never been separated by a fence prior to 1907. Under such circumstances, surely one's possession of a strip such as that in controversy must be manifested by something which definitely and unequivocally establishes the extent of the occupation. [See Keen v. Schweigler, 70 Mo. App. l. c. 422, 433.]

"Let us consider then the physical possession acquired by plaintiff by virtue of the construction of this fence in March, 1907. In the course of the opinion, on the former appeal, it is said:

'Another well-settled principle of law is that possession taken primarily for the purpose of securing an advantage in threatened or expected litigation is not such a possession as the court will recognize, and it cannot be made the foundation of any sort of action as between that party and the one against whom the advantage was sought by the act of taking possession. [Dyer v. Reitz, 14 Mo. App. 45; Swayze v. Bride, 34 Mo. App. 414; Apperson v. Allen, 42 Mo. App. 537; Buck v. Endicott, 103 Mo. App. 248, 77 S. W. 85; Milen v. Freeman, 136 Mo. App. 117, 117 S. W. 644.]' [Underwood v. Caruthersville, 146 Mo. App. l. c. 294, 129 S. W. 1079.]

"Without attempting the unprofitable task of a comparison of the evidence contained in this record with that in the record on the former appeal, it may be said that the record before us shows beyond controversy that plaintiff erected this fence, which was built during the night or very early one morning, solely for the purpose of securing a supposed advantage in litigation; and that

plaintiff should be held,. as a matter of law, to have thereby acquired a mere pretended and "scrambling possession" in.the enjoyment of which the law will not protect him.

"All of defendant's evidence, definitely touching the matter (and many witnesses testified), goes to show that plaintiff erected this fence after the lines had been run and the stakes set upon this strip of ground for the foundation work for the new building. And there is much positive testimony that the work of excavation had actually been begun. Plaintiff, in testifying in his own behalf, .denied that the lines had been run before he erected this fence, claiming that this work was begun some three days later. But plaintiff's own testimony shows that the old buildings had been removed, that there was building material on hand, and preparations under way for the construction of the new city hall. And it was an open, notorious fact that this work was about to begin, if indeed, as all the other testimony in the case shows, it was not already under way. Plaintiff admits that he employed a helper and erected this fence very early one morning when no one was about. The "scrambling possession" thus obtained by him is not such possession as the law will recognize and protect."

We hold that the plaintiff in the present case had failed to make it a case for the jury, and the judgment is therefore reversed. *Reynolds, P. J.*, and *Allen, J.*, concur.