Arch C. LINDSAY, Respondent-Plaintiff,

v.

Guy F. McLAUGHLIN, Appellant-Defendant.

No. 22595.

Kansas City Court of Appeals.

Missouri.

March 3, 1958.

Glennon E. McFarland, Kansas City, for appellant.

Francis G. Hale, Liberty, for respondent.

CAVE, Judge.

This is an action in forcible entry and detainer; Section 534.020 RSMo 1949, V.A.M.S. The trial to a jury resulted in a verdict in favor of the plaintiff in the amount of $1.00 for damages only, and nothing for rent. Judgment was entered

accordingly, and defendant perfected his appeal.

■ His first contention is that the court erred in denying his motion for directed verdict offered *at the close of plaintiff's evidence,* because no submissible issue was made. We cannot consider this point because, when defendant's motion was overruled, he proceeded to introduce evidence and thereby waived his right to complain of the court's action. For an array of cases so holding, see Key No. 50 under Section 510.280 RSMo 1949, V.A.M.S.

■ The second point in the brief is that the court erred "in refusing a motion to dismiss on behalf of the defendant after verdict or in failing to grant defendant a new trial because plaintiff failed to prove facts sufficient" to make a submissible case. There was no "motion to dismiss after verdict"; and no motion for a directed verdict *at the close of all the evidence.* On the contrary, the defendant joined, by instructions, in submitting the case to the jury. In his motion for new trial, defendant did ask the court to set aside the verdict "because plaintiff failed to prove facts sufficient to prove a cause of action"; but he did not assign or allege that the court erred in overruling his motion for directed verdict at the close of *all the evidence.* Under such circumstances, can he now raise the question of submissibility on the grounds assigned?

The most recent case we have found discussing this question is Ukman v. Hoover Mtr. Exp. Co., Mo.Sup., 269 S.W.2d 35, at page 36, wherein the court said: "Thus defendants not only failed to move for a directed verdict at the close of all the evidence but also failed in any after-trial motion to complain of the action of the trial court in submitting the case to the jury at the close of *all* the evidence. Section 512.160, subd. 1, RSMo 1949, V.A.M.S. provides that except for the questions of jurisdiction over the subject matter and as to failure of a pleading to state a claim upon which relief can be granted 'no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court'. Section 510.290 provides in effect that if a motion for directed verdict is made *at the close of all the evidence* and is not granted, the party who has so moved may within ten days move to have the verdict and judgment set aside in accordance with his motion for directed verdict. Section 510.310, subd. 4 provides that on appeal in cases tried *without a jury* 'The question of the sufficiency of the evidence to support the judgment may be raised whether or not the question was raised in the trial court.' (A provision not incorporated in § 510.290, supra.) *It appears from the foregoing statutory provisions that it is necessary in jury-tried cases, in order to preserve the question of submissibility for appellate review, to file a motion for directed verdict at the close of all the evidence and to assign the error of the court in having failed to have directed such a verdict in an after-trial motion, either one for a new trial or one to set aside a verdict and judgment and enter judgment for the opposite party."* (Last italics supplied.)

In the very recent case of 6551 Collins Avenue Corp. v. Millen, Fla.App., 97 So.2d 490, the Supreme Court of Florida discussed this question, and held, under its Rule 2.7 of Civil Procedure, 31 F.S.A., which is identical with our Section 510.280 and 510.290, that unless the defendant filed a motion for directed verdict at the close of all the evidence, he could not raise the question of submissibility on appeal. The court pointed out that its Rule 2.7 is almost verbatim with Rule 50, Federal Rules of Civil Procedure, 28 U.S.C.A., and reviewed many federal decisions holding to the same effect.

In support of his contention that he can raise the question of submissibility under the state of the record, defendant cites: Oganaso v. Mellow, 356 Mo. 228, 201 S.W. 2d 365; Lilly v. Boswell, 362 Mo. 444, 242

S.W.2d 73; Adair County v. Urban, Mo., 250 S.W.2d 493. In the Oganaso and Adair County cases it affirmatively appears that the defendant had filed a motion for directed verdict at the close of *all* the evidence. In the Lilly case the defendants appealed from an order sustaining plaintiff's motion for new trial on the limited ground of inadequacy of the verdict for damages, and contended that the evidence did not make a submissible issue of liability. The court said the defendants had not filed any *after-trial motions*, but that whether a submissible case was made was inherent in every case. It does not appear from the opinion whether the defendant had filed a motion for a directed verdict at the close of *all* the evidence. However, the court cited Nelson v. Kansas City, 360 Mo. 143, 227 S.W.2d 672, 673, in support of its conclusion; and it does appear in the Nelson opinion that the defendant had filed a motion for directed verdict at the close of *all* the evidence.

In cases where new trials have been granted for erroneous instructions, the courts have frequently examined the evidence to determine whether a submissible case was made, because errors in instructions are immaterial upon appeal, if the plaintiff's case should not have been submitted. Bootee v. Kansas City Public Service Co., 353 Mo. 716, 183 S.W.2d 892. But we do not believe those cases are decisive of the issue presented by the record in the instant case.

We have discussed this question at some length because the defendant, in his brief, earnestly contends that he could raise the question of submissibility on the theories just enumerated. But we are of the opinion that he cannot.

However, in the Ukman case, supra, the court pointed out that the defendants in that case, in their motion for new trial, and carried forward in their brief, assigned error in the giving of plaintiff's principal instruction because there was no evidence to support the theory of liability submitted;

and held that the question of submissibility must be determined in considering the propriety of the giving of said instruction. The same situation exists in the instant case, and we must determine whether the evidence supports plaintiff's theory as submitted in his principal instruction.

As stated above, this is a forcible entry and detainer action. Plaintiff claimed he was in peaceable possession of Lots 23 and 24, Block 6, Maple Park Addition, Kansas City, Clay County, Missouri; and that the defendant, without the consent and against the will of plaintiff, entered into possession of said real estate and still retains possession thereof. Plaintiff's Instruction No. 1 submitted that issue.

Defendant does not deny that plaintiff had been in possession of the lots prior to 1952; nor does he deny that he has taken and retained possession of the property since about that time. His contention is that plaintiff voluntarily surrendered possession to him, and that plaintiff's own testimony so shows; consequently, the evidence fails to make a submissible issue of forcible entry and detainer.

■ We shall examine the evidence on the question of whether plaintiff voluntarily surrendered possession, and in doing so, we must review the evidence from a standpoint favorable to plaintiff and give him the benefit of all reasonable inferences from all the evidence, and disregard all of defendant's unfavorable evidence.

■■ Plaintiff owned and had his home on a lot immediately south and adjacent to the controversial lots. In about 1942, without any right or authority, and without knowledge of the ownership, he enclosed lots 23 and 24 with a fence and kept a cow, chickens, ducks, dog pen, trash can, rain gauge, and occasionally parked his truck and car thereon. About 1949, Kansas City annexed this general territory, and the plaintiff was notified by the city authorities to remove the cow, chickens and ducks,

which he did, but left the other items on the lots.

In the spring of 1952, defendant purchased a lot immediately north and adjacent to the controversial lots. When he began the construction of a house thereon, he requested the plaintiff to remove the fence so that he could use lots 23 and 24 to store building material and as a means of access for machinery to carry on the construction. Plaintiff testified that he had no further use for the fence, and removed it at defendant's request. For some time thereafter, plaintiff kept his trash barrel, rain gauge and the dog pen on the lots, and occasionally mowed the grass, and had seen the defendant mow the grass.

In the late summer of 1955, plaintiff had a conversation with the defendant relative to the possession of these lots. He was asked: "Q. And didn't he request that you remove your rain gauge and your trash barrel off of these lots? A. Yes, sir.

"Q. And didn't you go ahead at his request and voluntarily on the way back pick up your rain gauge and take it back and put it over on your lot? A. I won't say that I—for sure that I picked up my rain gauge that night, but I did take my rain gauge up.

"Q. And you also removed the trash barrel, didn't you? A. Yes, sir, I did.

"Q. Now at that time you intended to relinquish possession of these lots, didn't you, and give them over to Mr. McLaughlin? A. Right at the sort of moment, yes, I did. * * *

"Q. That was your own voluntary act, wasn't it? A. Yes, sir.

"Q. At his request? A. Yes, sir.

"Q. And then later on you came up and talked to Mr. Hale (plaintiff's attorney) about it, isn't that true? A. Yes, sir.

"Q. And you decided maybe you had better have those lots back, isn't that true?

A. I went according to what Mr. Hale told me.

"Q. And you went back home and put your rain gauge back on that lot, didn't you? * * * A. I put the rain gauge back on, on the vacant lots where I did have them.

"Q. That was after you had voluntarily relinquished possession to Mr. McLaughlin this prior time that you spoke of, isn't that true? A. I just told him I would move. * * *

"Q. And at that time you didn't think you had any right to those lots, did you? That's what you told Mr. Leimkuhler, wasn't it? A. Yes, sir. * * *".

On redirect examination, plaintiff was asked: "Q. Now did you at any time after '52 or during '52, or at any time after that, did you tell McLaughlin that you would or did you remove from that property with the intent of surrendering possession? A. I just told him that I would move my dog pens off the vacant lots later.

"Q. Did you tell him or did you not that you would remove from that property in its entirety and surrender him possession of it? If that's what you told him, your lawsuit is over". The court sustained an objection to the last sentence of that question and cautioned the attorney. Plaintiff was then asked:

"Q. * * * Did you tell McLaughlin that you would or did you remove from that property with the intent of surrendering possession? A. You mean did I give him authority of the lots, give him possession? A. That's what I mean. A. No, I have not, never give him consent.

"Q. Did you tell him that you would? A. I didn't say that I would give him possession".

On recross examination, plaintiff testified:

"Q. You did tell Mr. McLaughlin that you would get off, and that you picked up

your rain gauge and took it over and picked up your trash barrel and took it off the lots, isn't that correct? A. I took the trash barrel and my rain gauge, yes.

"Q. And you stated at that time that you intended to relinquish possession of the lots? Didn't you just say that on this witness stand under oath? A. Well, I would like to correct it. I didn't intentionally give him possession of the lots.

"Q. Is there any reason why you should—why you previously stated that you intended to relinquish possession and that you voluntarily left and then you say that isn't true? Is there any reason why you made that previous statement that it was true when you testified here under oath, when you now say it isn't, that your statements were not true, is there any reason for that? A. No, sir.

"Q. Well, then, did you voluntarily get, remove your rain gauge and the trash barrel from the lots at that time? Did you do it voluntarily when he requested that you do it? A. I don't recall whether I done it that night or two or three days later, I could not recall on that.

"Q. But did you do it in pursuance to his request either that night or the next night after that * * *? A. I took it out * * *.

"Q. And was there any particular reason why you removed your trash barrel if it wasn't in pursuance to Mr. McLaughlin's request? A. There was no reason.

"Q. You just decided at that time to move it? A. Yes, sir.

"Q. Well, at that time you weren't making any other use of the lots, were you * * *? A. At that time, I don't remember, recall of anything else on the lots. * * *

"Q. * * * Isn't it a fact that you moved off voluntarily at his request, isn't that the truth? A. I just moved my rain gauge and my trash barrel off.

"Q. And at this time you intended to relinquish the lots because he had a letter from the owner, isn't that true? A. That's what he said.

"Q. Well, yes, and isn't it true, you thought that you had better get off at that time, didn't you? A. I, I didn't exactly know what to do until I talked to Mr. Hale * * *.

"Q. * * * Why did you remove the rain gauge and move your trash barrel? A. I just done it on my own accord.

"Q. * * * it was voluntarily, wasn't it? A. I voluntarily, yes, sir.

"Q. You voluntarily relinquished possession of that ground, didn't you? A. No, I voluntarily took up the rain gauge.

"Q. Well, that is the only use you were making of it at that time, wasn't it? A. Well, I haven't given him possession of the lots."

Plaintiff testified that his trash barrel was only about two feet over on the controversial lots; and that the dog pen was only partly on the vacant lots and partly on an alleyway.

■ It is perfectly apparent that plaintiff knew he was an intruder on these lots, and that he had no legal right to possession. He said, "I just occupy the lots". However, if he was in peaceable possession, whether rightfully or wrongfully, the defendant, nor anyone else, had any right to forcibly dispossess him. Forcible entry and detainer is a possessory action, and in such action it is immaterial whether the party dispossessed by force had title or even rightful possession. This has been the established law since the early case of Harris v. Turner, 46 Mo. 438. See also Sec. 534.020; Kimes v. Conran, Mo.App., 9 S.W.2d 549, 551; and Steinke v. Leicht, Mo.App., 235 S.W.2d 115, 123. However, this does not mean that a party in possession of land may not, upon the request of another, voluntarily surrender his posses-

sion, and if so, there would be no forcible entry.

Clearly plaintiff voluntarily removed his fence which enclosed the lots and permitted defendant to store building material and machinery thereon. After that time the only evidence of plaintiff's possession was a trash barrel, which was within two or three feet of his own property line; a rain gauge; and a dog pen of some description partly on the rear of the lots and partly in an alley. He admitted that he voluntarily removed the trash barrel and rain gauge, and promised to remove the dog pen; and that at that time, he intended to relinquish possession. It is true he testified that he did not *tell* the defendant that he was surrendering possession, but his own voluntary ac-

tions made that unnecessary. Everything he did was inconsistent with a claim of continued possession. He admitted that defendant did not threaten him or use any coercive means to secure possession.

It is our conclusion that plaintiff's own testimony conclusively establishes that he voluntarily surrendered possession and that there was no forcible entry by defendant.

It follows that the court erred in giving plaintiff's Instruction No. 1, because there was no substantial evidence to support it.

The judgment is reversed and the cause remanded.

All concur.