Arthur W. JACOBS and Dorothy Jacobs, His Wife, Plaintiffs (Respondents),

v.

George FRANGOS and Helen Frangos, His Wife, Defendants (Appellants).

No. 30309.

St. Louis Court of Appeals.

Missouri.

Nov. 17, 1959.

Theodore P. Hukriede, Washington, for appellants.

G. C. Beckham, Steelville, Jenny & Cole, Union, for respondents.

DOERNER, Commissioner.

Defendants appeal from a judgment for $1,100 rendered against them by the Circuit Court of Franklin County. The gist of plaintiffs' complaint was that the defendants had excavated a ditch in the bed of a creek, whereby the natural course of the stream was changed, resulting in the erosion and flooding of plaintiffs' land.

The evidence showed that plaintiffs owned a tract of land in Crawford County, and that the defendants' land adjoins theirs to the South. A stream named Crooked Creek ran in a Northwestwardly direction through defendants' property and onto the land belonging to the plaintiffs. According to the plaintiffs' evidence, prior to the work complained about the creek, after crossing the boundary and flowing on their land in a Northwestwardly direction, made a bend to the left, so that it ran in a Westwardly direction. State Highway 19 crossed the Northeastern part of the defendants' property and the Southeastern portion of the plaintiffs' farm, running in a South-west-Northeast direction. Where it crossed Crooked Creek, on the defendants' farm, a bridge had been constructed about 1927 or 1928. Defendants admitted that in the month of November, 1956, they had caused a bulldozer to do certain work in the bed of Crooked Creek both above and below the bridge, but the nature and amount of the work and the result so far as a change in the flow of the water was concerned, were sharply disputed questions of fact.

Plaintiffs' evidence was that Crooked Creek was a living stream which always had water in it; that prior to the time the work was done the water flowed through a channel on the South side of the bed of the creek; that a gravel bar was on the North side of the creek bed; and that their bank, on the North side of the creek, was well embedded with willows. Plaintiffs' evidence further showed that the defendants had bulldozed a channel 10 feet wide, varying in depth from a foot to 3 feet or more, from the highway bridge downstream to the boundary line, a distance of about 400 or 500 feet; that the new channel, into which the water was diverted, was cut through a group of willows opposite the bridge; and that the channel was to the North of the natural channel, and made a straight chute headed towards their property. The result, according to plaintiffs' evidence, was that when the floods came in the late winter and spring of 1957, the water came down the new channel, washed out the protective screen of willows, and eroded the North bank of the creek on plaintiffs' land, so that it receded varying distances, about 40 feet near an old iron mine and about 300 feet closer to their cultivable land. Plaintiffs also complained that the creek bed on the North side had been raised by the washing down of gravel, so that plaintiffs' land instead of being about 7 feet above the mean level of the creek, is now only about 3 feet above, and in some places only 2 feet above it; and that the water is seeping into the iron pit at the rate of 2,000 gallons an hour instead of that of 15 gallons an hour which occurred before the bulldozing. Expert opinion evidence was offered by the plaintiffs' witnesses that the digging of the new channel caused the washing away of the new Northern bank on plaintiffs' land; that to take corrective measures to protect the land from further erosion would cost $1,750, and that the fair market value of plaintiffs' farm had been depreciated from $3,000 to $4,000 by reason of the changes which have occurred.

On behalf of defendants, testimony was offered that before any work was done the current of Crooked Creek would shift from one side to the other over a period of years; that the work consisted only of opening up the gravel bar for a distance of 70 feet below the bridge; that no change was

made in the banks; and that except in the event of high water the creek was following the same channel as before the work was done.

■ Defendants' first assignment of error is that the court erred in overruling their motion for a directed verdict, filed at the close of plaintiffs' case. The motion was not renewed at the close of the whole case. We cannot consider this assignment. By introducing evidence after their motion was overruled, defendants thereby waived their right to complain of the court's action. Stephens v. Kansas City Gas Co., 354 Mo. 835, 191 S.W.2d 601; Lerner v. Yeghishian, Mo.App., 271 S.W.2d 588; Lindsay v. McLaughlin, Mo.App., 311 S.W. 2d 148.

■ Their second and third assignments relate to the giving of plaintiffs' Instruction No. 1. It is contended that "* * * there was no evidence that the waters of the stream had been diverted from its (sic) natural course." As we understand the extremely brief argument on the point, what defendants mean is that plaintiffs' evidence did not show that the work done by defendants diverted Crooked Creek out of its high banks to an entirely new watercourse. The answer to this contention is that that was not the basis of plaintiff's cause of action and the jury was not so instructed. Plaintiffs' instruction required the jury to find that defendants had caused a bulldozer to dig a trench in the bed of the stream, bearing towards the planitiffs' land, which diverted the water from its natural course onto the land of plaintiffs, to their damage. There was an abundance of evidence to support such a submission, and if believed by the jury plaintiffs were entitled to recover. For one may not obstruct or so divert the natural flow of a stream without liability for ensuing damage to others. Happy v. Kenton, 362 Mo. 1156, 247 S.W.2d 698.

■ Defendants' final contention is that there was no evidence that they dug an "artificial ditch" or "trench" and that the use of such words in plaintiffs' Instruction No. 1 tended to mislead and confuse the jury. We find no merit in the argument. The most casual reading of the transcript reveals that such terms were repeatedly used by the plaintiffs' witnesses to describe the new channel which they testified the defendants had caused to be bulldozed in the wide bed of the stream.

The Commissioner therefore recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, the judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.