NATIONAL GARMENT COMPANY, A Corporation, Plaintiff-Appellant,

v.

CITY OF PARIS, MISSOURI, A Municipal Corporation, and Gates Energy Products, Inc., A Corporation, Defendants-Respondents.

No. 64612.

Supreme Court of Missouri,
En Banc.

Aug. 16, 1983.

Rehearing Denied Sept. 20, 1983.

Gary L. Vincent, Jerome Kalishman, Fordyce & Mayne, Clayton, for plaintiff-appellant.

Jerome W. Seigfreid, Louis J. Leonatti, Seigfreid, Runge, Leonatti & Pohlmeyer, Mexico, Thomas M. Shea, Paris, for defendants-respondents.

GUNN, Judge.

An action in forcible entry and detainer under § 534.020, RSMo 1978 is the subject matter of this appeal. Plaintiff-appellant is the National Garment Company; the City of Paris (City) and Gates Energy Products, Inc. (Gates) are the defendants-respondents and alleged offenders in the plaintiff's cause of action.[1] At the close of plaintiff's evidence, the trial judge directed a verdict in favor of the City and Gates. The Eastern District of the Missouri Court of Appeals affirmed the judgment. This Court granted application to transfer, and we, too, affirm the judgment.

The underlying issue is whether there was sufficient evidence of forcible entry and detainer proven by plaintiff to submit the case to the jury. The guiding precept in reviewing the propriety of a directed verdict is that the evidence and reasonable inferences therefrom are to be considered in the light most favorable to the appellant. *Matter of Estate of Passman,* 537 S.W.2d 380, 385 (Mo. banc 1976).

Germ seeds for this litigation were planted in November 1971 when the plaintiff and the City entered into an agreement and lease for the construction and use of a manufacturing facility by plaintiff in the manufacture of children's sportswear. The transaction was authorized pursuant to §§ 100.010 to 100.200, RSMo 1969 which permitted certain cities to issue general revenue bonds for the construction of manufacturing and industrial plants to be leased to private individuals or corporations. The main purpose of the plant constructed and

1. Two other defendants, the mayor of Paris and its city attorney, were dismissed from the case on the basis of official immunity.

leased to plaintiff was to provide jobs for persons living in and around the City. And, indeed, for a time the purpose of the plant was fulfilled. Upon completion of the facility, plaintiff moved in and commenced the manufacture of children's sportswear, employing about 100 persons.

However, in September 1979, plaintiff decided to cease its manufacturing operations at the Paris plant, citing economic reasons for its decision. Plaintiff's president thereupon sent a letter to the City advising it of its decision to terminate operations and requesting aid in locating a new tenant. And plaintiff did make effort to secure a surrogate tenant but was unsuccessful.

Shortly before November 1979, plaintiff removed from the plant all of its sewing machines, fixtures and equipment, excepting only an electrical feed rail, air compressor and air hose system. By January 1980, everything had been removed, and the building was vacant.

In keeping with the lease, plaintiff did, however, continue to pay taxes, maintain insurance and performed some repair work, principally repair to a leaking roof. It also had a truck driver employee from another plant located in Fayette stop by from time to time to look into the vacant building.

On January 21, plaintiff advised the City that it had been unsuccessful in its efforts to secure a substitute tenant but gave assurance that it would continue monthly rental payments and maintain the facility. Plaintiff also suggested that the City should have its police periodically check the vacant premises, which was done.

On January 31, 1980, the City's mayor asked for and received keys to the building. This action was followed by a February 26, 1980 letter in which the City advised plaintiff that it was terminating the lease as of March 10, 1980 under a default provision providing for termination if "tenant shall permit the plant to be vacant or deserted for a period of sixty (60) days."

Upon receipt of the notice, plaintiff's president contacted an attorney and upon advice of counsel, had some property consisting of chairs, tables, a sewing machine and empty boxes moved into the plant. Sometime in March, the City notified the plaintiff that the equipment had been moved and was stored in City Hall. The City had the locks changed on March 25, 1980 and entered into a lease with Gates, which took possession of the plant on March 27, 1980.

Plaintiff argues that the trial court erroneously granted the City's motion for a directed verdict, maintaining that there is considerable evidence in the record to create a jury question on the issue of possession—a critical factor in forcible entry and detainer. *Duffy v. Clark Oil & Refining Corp.,* 575 S.W.2d 888 (Mo.App.1978).

Plaintiff suggests the following on its part as evidence of intent to retain possession of the plant and thereby form the basis and justification for its cause of action: periodic inspection of the premises, payment of rent, making repairs, heating the facility, maintaining insurance and storage of various items.

Mostly, there is a dearth of recent case law on the subject of forcible entry and detainer, so it is necessary from time to time to dust off and hark back to some venerable old decisions for guidance. But first, it is essential to note that the foundation brick for the action under consideration is possession. Forcible entry and detainer is a possessory action, with it being immaterial whether the party being forcibly dispossessed had title or rightful possession. *Lindsay v. McLaughlin,* 311 S.W.2d 148, 152 (Mo.App.1958). And, generally, the possession issue is one of mixed law and fact. *Duffy v. Clark Oil & Refining Corp.,* 575 S.W.2d at 888–89. This is so though the conclusion reached in this case is that the trial judge correctly ruled on the possession issue as a matter of law. Thus, it is appropriate to note that determination of what constitutes possession is a matter of law whereas whether the requisite acts have been accomplished is a factual matter. *Underwood v. City of Caruthersville,* 197 Mo. App. 358, 194 S.W. 1090, 1091 (1917). In this case no dispute of the facts appears, so

the trial court had the issue before it of whether the facts presented constituted possession by the plaintiff. It concluded that plaintiff was not in possession under the facts, and it was correct in arriving at that conclusion.

It is § 534.200, RSMo 1978 that sets forth the nature of plaintiff's case and the proof which it must make: That it "... was lawfully possessed of the premises, and that the defendant unlawfully entered into and detained or unlawfully detained the same." And always the plaintiff in the action under consideration must prove every element of its case. *Massey v. Goforth,* 305 S.W.2d 894, 897 (Mo.App.1957). Plaintiff has failed as a matter of law to prove its case. It was neither in possession of the premises nor was the defendant's entry unlawful.

■ The possession by plaintiff essential to a forcible entry and detainer action contemplates acts by it indicating an intention to hold possession to itself. *Bartlett v. Draper,* 23 Mo. 407, 409 (1856). The possession must be manifested unequivocally, *Underwood v. City of Caruthersville,* 194 S.W. at 1092, and bona fide, *DeGraw v. Prior,* 60 Mo. 56, 58 (1875). The record is destitute of the requisite qualities.

■ Generally, the actual possession necessary to an action in forcible entry and detainer consists of exercising acts of dominion over the land in dispute and in making the ordinary use of it, and it may consist of, and be shown by, a great number and combination of acts, the character of which must necessarily vary with the situation of the parties, the character of the land and the purpose to which it is adapted. 36A C.J.S. *Forcible Entry and Detainer* § 11b (1961). In *Dyer v. Reitz,* 14 Mo.App. 45 (1884), possession was defined as "a real dominion, capable of devoting the property to some beneficial use, however small, by him who enjoys it." *Id.* at 46.

■ Considering the situation of the parties, the character of the property and the purpose to which it was adapted, it cannot be said that plaintiff's acts evidenced an intent to maintain possession. Most of the acts performed by it were contractual obligations imposed by the terms of the lease. The property in question was a building suitable for use as a manufacturing plant. The acts performed by plaintiff evinced no intent on its part to further utilize the building in that capacity. The storage of "equipment" in the Paris facility was upon "advice of counsel" and falls squarely within those acts condemned as performed solely to gain an advantage in litigation. That action taken to achieve some advantage in the litigative process does not equate to the requisite "possession" for success by a plaintiff in forcible entry and detainer. It is at best a sham, more or less a "scrambling possession" and is certainly not the bona fide possession required. *Hafner Mfg. Co. v. City of St. Louis,* 262 Mo. 621, 172 S.W. 28, 34 (1914); *Underwood v. City of Caruthersville,* 194 S.W. at 1092.

It is further noted that plaintiff presented no evidence indicating any intention to maintain possession in itself. To the contrary, the evidence showed that it had ceased its operation, removed all useful equipment, and abandoned the purpose for which it contracted to take possession. It was not exercising the type of dominion over the facility that was capable of devoting it to some beneficial use. *Dyer v. Reitz,* 14 Mo.App. at 46. Instead, it is apparent that plaintiff abandoned the facility and ceased its operation. Thus, no forcible entry occurred. *Lindsay v. McLaughlin,* 311 S.W.2d at 152–53. Plaintiff's situation in this regard is not enhanced by the fact that it gave city officials the keys to the vacant building. *See* Thompson on Real Property, 3A, § 1369 (1981) on effect of voluntary release of keys to landlord as being a peaceable and lawful entry which would destroy the unlawful entry aspect of plaintiff's required proof in its cause of action.

■ Plaintiff's action in placing some useless items in the plant to gain an advantage in litigation has already been discussed. That is not possession. Neither does payment of tax or rent alone establish possession. *Miller v. Northup,* 49 Mo. 397 (1872); *St. Louis Agricultural & Mechanical*

*Ass'n v. Reinecke,* 21 Mo.App. 478, 483 (1886).

Based on the uncontroverted facts as applied to established legal principles, the trial court had ample basis for finding as a matter of law that plaintiff was not in possession of the vacated premises.

Plaintiff's point that the trial court erred in dismissing out the City's mayor and city attorney is rendered moot by disposition of the possession issue.

The plaintiff also argues that the trial court erred in disallowing into evidence a letter written by its attorney to the City after notice of termination of lease had been given. A review of the letter establishes only that it states matters which came into evidence through the testimony of plaintiff's witnesses. It sheds no additional light on the possession issue. The exclusion of cumulative evidence is harmless and not reversible error. *Sampson v. Missouri Pacific Railroad Co.,* 560 S.W.2d 573, 590 (Mo. banc 1978).

Judgment affirmed.

HIGGINS, BILLINGS and DONNELLY, JJ., and MORGAN, Senior Judge, concur.

RENDLEN, C.J., concurs in result.

BLACKMAR, J., concurs in result in separate opinion filed.

WELLIVER, J., not sitting.

BLACKMAR, Judge, concurring in result.

The essential facts as carefully detailed in the principal opinion are not in dispute, but there may sometimes be jury issues even where the facts are undisputed. It is unfortunate that the trial judge saw fit to direct a verdict for the defendant rather than submitting the case to the jury, which then might have settled matters by itself returning a verdict for the defendant, so that the lengthy appellate proceedings would be avoided. If the jury had found for the plaintiff the trial judge could have corrected the situation by sustaining a motion for judgment n.o.v., if persuaded, as he was, that the plaintiff had not made a submissible case. It is almost always better to take the little extra time that is involved in submitting a case such as this to the jury, rather than directing a verdict.

I am nevertheless of the opinion that the judgment for the defendant is correct, although my reasons are substantially different from those set out in the principal opinion. I therefore concur in the affirmance of the judgment.

The plaintiff lessee brought an action of forcible entry under § 534.020, RSMo 1978,[1] challenging the defendant city's use of self-help in taking possession of the factory property which it had leased to the plaintiff, removing the plaintiff's property from the premises and into storage, and putting another tenant in possession. If a tenant in possession is dispossessed in any of the ways set out in that statute the tenant is entitled to be restored to possession even though the landlord, rather than the tenant, might have been entitled to recover possession by going to law rather than taking the law into its own hands. Just as when the football referee throws his flag, the play must be run over, even though there may have been a long gain and the infraction may have had no discernable effect on the play. *Lucas Hunt Village Co. v. Klein,* 358 Mo. 1054, 218 S.W.2d 595 (1949). The statute expresses a policy of discouraging self-help and encouraging the use of the processes of the law.

1. Section 534.020, RSMo reads as follows:

If any person shall enter upon or into any lands, tenements or other possessions, with force or strong hand, or with weapons, or by breaking open the doors or windows or other parts of a house, whether any person be in it or not, or by threatening to kill, maim or beat the party in possession, or by such words or actions as have a natural tendency to excite fear or apprehension of danger, or by putting out of doors or carrying away the goods of the party in possession, or by entering peaceably and then turning out by force, or frightening, by threats or other circumstances of terror, the party out of possession, and detain and hold the same—in every such case, the person so offending shall be deemed guilty of a *"forcible entry and detainer"* within the meaning of this chapter.

The plaintiff, however, must meet the rather strict requirements of the statute. Cf. *Waring v. Rogers,* 286 S.W.2d 374 (Mo. App.1956), as to the unlawful detainer portion of Chapter 534. The drastic remedy provided in this chapter is not lightly given.

The principal opinion holds that the plaintiff did not have "possession" of the factory property at the time the city took over, and therefore is not entitled to bring an action for forcible entry. This holding is not supported by the cases. The plaintiff had entered into possession under a valid lease. It found production unprofitable and therefore discontinued it. The lease did not require it to continue production, and allowed use of the premises for "any and all purposes allowed by law . . . ." It then sought to find a subtenant or assignee for the lease. The lease did not preclude this. The lessee not only met its financial obligations under the lease, including the payment of rent, but also caused one of its employees to check the premises twice weekly, and continued heating and required maintenance of the premises. It did deliver a set of keys to the city, but as part of an arrangement for mutual benefit, and with no purpose of surrendering its lease. "Possession" has never been construed to require a total presence.[2] It consists both of a physical connection and a demonstrated intent. The plaintiff's initial possession was lawful.[3] The evidence, shows that the plaintiff sought to maintain and preserve its rights, and that it regularly attended the premises after the factory operations ceased. In situations in which the tenant had no more presence than this one has, the required degree of possession has been found.[4] I simply cannot agree that this plaintiff, as a matter of law, was not in possession of the leased premises at the time the city took over.

There is another reason, however, why the plaintiff cannot maintain an action of forcible entry. The governing statute, § 534.020, sets out numerous situations which constitute the offense of "forcible entry." Most involve the use of force, which the city's entry does not. The closest one to this case, and the one argued by the tenant, is that of "putting out of doors or carrying away the goods of the party in possession." The city did not commit this offense. It notified the plaintiff of its election to terminate the lease, for breach of expressed covenant. It then entered with the key furnished by the plaintiff. It did not set the plaintiff's 10' by 12' stack of goods on the street, but rather undertook to store this property, which the plaintiff had caused to be placed on the premises after receiving the notice in order to demonstrate its contention, subject to the plaintiff's direction. There is no evidence of any damage to these goods. The record simply does not show the conduct which is necessary in order to invoke the forcible entry statutes, and the plaintiff, therefore, cannot maintain a forcible entry action so as to be entitled to judgment without a showing of ultimate right to possession.

The plaintiff might nevertheless maintain a claim for unlawful detainer if it can show, pursuant to § 534.030, that it was entitled to possession and that the defendant city wrongfully dispossessed it. The pertinent part of the statute permits the action under circumstances as follows:

---

**2.** In *Bartlett v. Draper,* 23 Mo. 407, 409 (1856), this Court approved an instruction as follows:

> In order to constitute possession in plaintiff, it is not necessary that he should stand on the land, or keep servants or agents there; but any act done by himself on the premises indicating an intention to hold the possession thereof to himself, will be sufficient to give him the actual possession.

**3.** This distinguishes such cases as *Lindsay v. McLaughlin,* 311 S.W.2d 148 (Mo.App.1958); *Hafner Manufacturing Co. v. City of St. Louis,* 262 Mo. 621, 172 S.W. 28 (1914); *Underwood*

*v. City of Caruthersville,* 197 Mo.App. 358, 194 S.W. 1090 (1917); *Dyer v. Reitz,* 14 Mo.App. 45 (1884), all cited in the principal opinion.

**4.** See *Bartlett v. Draper,* note 2, *supra; Miller v. Northup,* 49 Mo. 397 (1872); *St. Louis A. & M. Association v. Reinecke,* 21 Mo.App. 478 (1886), all cited in the principal opinion. See also *Purcell v. Merrick,* 172 Mo.App. 412, 158 S.W. 478 (1913); *Robinson v. Ramsey,* 190 Mo. App. 206, 176 S.W. 282 (1915); *Richardson v. Liggett,* 453 S.W.2d 249 (Mo.App.1970).

[W]hen any person wrongfully and without force, by disseisin, shall obtain and continue in possession ..., and after demand made ... shall refuse or neglect to quit such possession....

The difference between a forcible entry action and an unlawful detainer action is that, in the latter, the plaintiff must show the ultimate right to possession. It is entirely appropriate to treat the plaintiff's complaint in forcible entry as an unlawful detainer action. Both actions are provided for by § 534.060. The statutes are survivors of the former justice and magistrate practice, and pleadings are somewhat informal. Even if the case is treated as an unlawful detainer, however, I conclude that, under the conceded facts, the plaintiff did not make out a case.

The lease provides that the lessor city may terminate it if the premises are "vacant or deserted" for more than 60 days. The city gave appropriate notice of termination. I am convinced that the premises were vacant as a matter of law, and that the city's notice was effective. The trial court did not err, then, in directing a verdict for the defendant, even though the defendant had the burden of proving breach of condition. Cases in which a verdict is properly directed in favor of the party having the burden of proof are somewhat rare, but a verdict may be so directed when entitlement is established by evidence which is binding on the party against whom the verdict is directed.[5] Here the plaintiff's own evidence shows that it ceased manufacturing operations and moved all property useful in its manufacturing operation from the leased premises, with no intention of resuming operations. Its effort at storing some property not used in the manufacturing operation on the premises came only after the city had served a notice of termination. The premises, under these circumstances, were vacant as a matter of law.

The term "vacant" is a word which these parties selected for their contract. In contrast to "possession," it is not primarily a legal term. The dictionary definition is as follows: (Webster's Third New International Dictionary)

> 2. Being without content or occupant ... 4. free from activity; free from work or occupation.

The defendants emphasize the purpose of the publicly financed manufacturing plant, which was to provide jobs for the city of Paris. The lease did not contain a covenant requiring the continuation of manufacturing operations, nor did it contain a covenant against subleasing. The plaintiff, then, acted within its rights in ceasing operations and in trying to find a subtenant or assignee. But the city was not without protection. The sixty-day provision limited the time that the plaintiff could leave the property vacant without putting its tenancy in jeopardy. The property was vacant in the sense in which the parties used the term, despite the bi-weekly visits and repair activities, and there is no basis in the evidence for the jury to find otherwise. The notice of termination, then, was in order, and the defendant city was entitled to possession. The notice was effective when received, and the city's rights were not lost by reason of the tenant's later claim and actions. It is more satisfactory to place our decision on the contract term, "vacant," which was chosen by the parties for this particular situation, rather than proceeding on the legal meaning of "possession," which would result in a holding potentially affecting the entire course of the law, including many vastly different fact situations. The construction of the contract, of course, is for the court.[6]

---

**5.** In *Wendorff v. Missouri State Life Insurance Co.,* 318 Mo. 363, 369–70, 1 S.W.2d 99, 101 (1927), the court held that a verdict could be directed in an affirmative defense

> [w]hen the proof is documentary, or the defendant relies on the plaintiff's own evidential showing (or evidence which the plaintiff admits to be true) and the reasonable inferences therefrom all point one way, ...

**6.** See, e.g. *Commerce Trust Company v. Howard,* 429 S.W.2d 702, 705–06 (Mo.1968); *O'Brien v. Missouri Cities Water Co.,* 574 S.W.2d 13 (Mo.App.1978).

522

It is not necessary to consider the meaning of the term "deserted," inasmuch as "vacant" and "deserted" appear disjunctively. "Vacant" might indicate a state of occupancy, whereas "deserted" more appropriately describes a state of mind. The city may justify its right to possession by showing either.

The term "vacant" was inserted in the lease to protect the defendant lessor, the city, against events such as happened in this case. It is to be regretted that the city took the law into its own hands and used self-help, rather than availing itself of available legal process. The key was not delivered to it as a voluntary surrender. By its actions the city has caused problems for courts at three levels, and this decision here has not been an easy one.

Although I initially entertained serious doubts, I am now persuaded that the judgment was for the right party and that it is properly affirmed. I therefore concur in the result reached by the principal opinion.

